H. B. STOCKWELL, Appellant, v. THE CHICAGO & NORTH-WESTERN RAILWAY COMPANY.

**Master and Servant:** RISKS OF EMPLOYMENT. A locomotive fireman assumes the risk of being overcome by the heat while in a position over the boiler for the purpose of oiling the machinery, which position he is obliged to assume because of the defective condition of the automatic lubricator.

SAME. What will constitute the ordinary care which a master is bound to exercise in inspecting and repairing appliances furnished to his servants depends somewhat upon the danger to be reasonably apprehended from the defective condition of such appliances and the opportunity which the servant has of discovering such condition.

RULE APPLIED: *Proximate injury.* Plaintiff was a fireman on a locomotive equipped with an automatic lubricator, so arranged that oil was forced through a glass tube in the cab. This tube, as sometimes occurs, broke, when it became necessary to shut off the steam forcing the oil and to pour oil into the cups, from over the boiler, until a new tube could be inserted. Because of a defective T, plaintiff, after closing the valve, was unable to reopen it again, after replacing the tube, and was therefore obliged to oil the engine by climbing on top of the boiler and pouring oil into the cups, and, while so engaged, he was overcome by heat and injured. *Held,* that the breaking of the tube and the T were not the reasonable and probable cause of plaintiff's injury, and that, since it was his duty to oil the engine in this way, on the breaking of the tube, the heat was a risk incident to the employment, and he could not recover.

*Appeal from Clinton District Court.*—HON. P. B. WOLFE, Judge.

THURSDAY, MAY 26, 1898.

ACTION to recover for personal injuries sustained by plaintiff while in the employment of the defendant as a locomotive fireman, because of certain alleged acts of negligence

on the part of the defendant. The defendant answered, denying generally, and alleging that the conditions complained of were known to the plaintiff; that he continued in service without complaining thereof, and thereby assumed the risk, and waived the right to complain of injuries that might be caused thereby. At the close of the evidence, the court, on motion of the defendant, directed a verdict for the defendant, and rendered judgment thereon. Plaintiff appeals.—*Affirmed.*

*Chas. A. Clark* and *C. H. George* for appellant.

*Hubbard & Dawley* for appellee.

GIVEN, J.—I.   There is no dispute as to the facts, and they are substantially as follows:   On and for a long time prior to July 13, 1892, the plaintiff was employed by the defendant as a locomotive fireman, and on that day, and for some time previous, he was firing engine No. 749, Mr. Yule being the engineer. On the morning of the thirteenth they started east from Belle Plaine for Clinton, the engine drawing a train of freight cars. This engine was equipped with an automatic lubricator, attached to the end of the boiler in the cab, so arranged that, when open to the pressure of the steam and water, oil, supplied from an oil cup, was continually forced through a glass tube, and thence through pipe to the cylinders, the passage of the oil being observable through the glass tubes.   It was provided with valves by which the oil and the steam and water pressure could be shut off and turned on.   It sometimes occurred that from heat or other cause the glass tube would unexpectedly collapse, and in such instances it was necessary to immediately shut off the steam and oil from the lubricator, until another glass tube, a supply of which was carried on the engine, could be put in place.   As the train was leaving Belle Plaine that morning, the tube in the lubricator on the left-hand side of the engine broke, whereupon plaintiff immediately closed the valves, so as to prevent a flow of steam and hot oil into the cab, and for the purpose of putting in another tube.   The T, or

handle, to these valves being very hot, it was necessary to quickly give them a turn, let go, grab, and turn again, and so on until the valve was closed. In thus closing one of these valves, the stem broke off, so that the valve could not be opened; and therefore a new tube could not be inserted, thus rendering it necessary, in oiling the engine, that oil should be poured into the cup by hand, at frequent intervals. This could only be done when the engine was in motion, and not working steam, and was usually done after steam had been shut off, in coming into stations. It was the duty of the plaintiff, when the lubricators were not operating, to put oil into the cup. To do this, he had to get up over the end of the boiler, with his head near the top of the cab, and remain there for several minutes, gradually putting oil into the cup. This duty plaintiff had performed eight or nine times after leaving Belle Plaine before reaching Stanwood, and had put oil into the cup on coming into Stanwood. The day was very hot, and the position which plaintiff had to take in putting oil into the cup exposed him to a great heat from the boiler. After oiling on approaching Stanwood, the plaintiff, though a strong man, was overcome by the heat to which he had been exposed, and, there can be no doubt, was seriously injured thereby. At the time the T or handle to the valve broke off, it fell to the floor of the cab, and plaintiff testifies: "I got down, and picked it up, and looked at it, and it was half broken off. I could tell that by the grease, the corroding on it; it was two-thirds broken off. That was the rod itself, right under the T. I thought no more of it, but just threw it out of the cab." He further testified: "I had never observed or known before that it was broken or weak, only it was the least little bit bent, but almost everything in the cab was bent some. The T was what was bent a little bit. If an inspection had been made, it could have been determined by an examination whether it was defective or not; if a man had closed it off, for it broke off with my turning it with my fingers. It could have been tested by tapping it with a hammer. It would not have taken but a very light tap. Or it could have been tested by closing it or opening it."

II.   Counsel have discussed this case with much elabora-
tion and many citations of authorities, but, as we view it, it
involves only the application of a few well-established and
undisputed principles of law.   The charge is that the defend-
ant negligently and carelessly failed to inspect said apparatus
and keep the same in repair, in consequence of which negli-
gence plaintiff was injured without fault on his part.   Defend-
ant's motion for a verdict was upon the grounds that there
is not sufficient evidence to support the charge of negligence,
nor a finding that the negligence charged was the proximate
cause of the injuries complained of; also upon the grounds
that plaintiff knew of and voluntarily assumed the dangers,
that he was guilty of contributory negligence, that the injuries
were not the natural and probable result of the negligence
charged, nor such as could have been reasonably foreseen, and
that the evidence is not sufficient to sustain a verdict for the
plaintiff.   The learned district judge held that the plaintiff,
having accepted the employment knowing that he might be
required to use the cups, and oil the engine through them,
assumed the risk of so doing, and therefore sustained the
motion for a verdict.   The principles of law applicable to this
case are laid down in *Brann v. Railroad Co.,* 53 Iowa, 596, are
fully sustained by the cases cited therein, have ever since been
followed, and are undisputed in this case.   Under the law as
there announced, this defendant was bound to use ordinary
care in selecting this lubricator, so as not to subject its
employes to unreasonable danger, but no complaint is made
of the selection.   As such appliances may in time
become out of repair, defendant was also bound to
exercise ordinary care in inspecting and repairing the
appliance, so as to keep it fit to be used.   "What is such care
must be measured by the character of the business and risk
attending its prosecution."   "Ordinary care does not require
that every possible contingency must be anticipated and
guarded against, but only such as are likely to occur.   The
duty imposed does not require the use of every possible pre-
caution to avoid injury to individuals, nor that the company

should have employed any particular means which it may appear, after the accident, would have avoided it. It is only required to have used such reasonable precautions to prevent accidents as would have been adopted by prudent persons prior to the accident." *McKee v. Railway Co.,* 83 Iowa, 622. The only consequences that could reasonably have been anticipated to follow a break of the valve stem were these: That if broken when the valve was open, and so that it could not be closed, steam and oil would be injected into the cab until the steam was shut off from the engine; and, if broken, as it was, when the valve was closed and out on the road, the oiling would have to be done by hand, through the cups. Surely, the most prudent person would not have anticipated that the occasional occurrence of the break of the glass tube and the breaking of the valve stem would have occurred at a time when the combined heat of the day and that from the boiler would have rendered oiling by hand dangerous. Where only such consequences as we have named were to be expected, ordinary care did not require the same diligence in inspecting as where defects were more liable to occur, and where actual danger might reasonably be expected. This lubricator was under the constant observation of the plaintiff, and, in part at least, under his care, and he could have discovered the defect in the valve stem as readily as any other person. Though it be conceded that he was not charged with the duties of inspecting the lubricator, yet certainly the defendant had a right to assume that he would report any defects therein observed by him, and that, none being reported, he had not seen any. We think it cannot be said that, as to the plaintiff, the defendant was negligent in not discovering and repairing the stem of this valve.

III.   It is also laid down as the law in the case of *Brann v. Railroad Co., supra,* that, in accepting employment as a fireman, the plaintiff assumed the ordinary risks incident to that employment. The lubricator was so constructed as that, in the event of its failing to operate as intended, the oiling of the engine could be done by hand, through the cups. Plaintiff con-

cedes that when, from any cause, the lubricator failed to operate, it was his duty to do the oiling by hand, just as he did it on the thirteenth day of July, 1892, and therefore, under the rule, he assumed all the ordinary risks of oiling in that manner. The injury is said to have resulted from the excessive heat to which the plaintiff was exposed. But exposure to the heat was one of the ordinary risks of the employment. He assumed the duty of oiling by hand whenever occasion required it, whether the day was hot or cool.

IV. It being plaintiff's duty to oil by hand, and he having done so in the proper manner, he was not guilty of any negligence contributing to his injury in doing the oiling. We have seen, however, that he knew that the T of the valve had been bent for some time, and that he did not report that fact, nor examine it to see whether or not the stem was broken. Whether this failure on his part was such negligence as to defeat recovery we need not determine, as, for the reasons already stated, the court correctly sustained defendant's. motion for a verdict.—AFFIRMED.