124    81
144    551

GEORGE H. CRANE, Appellant, v. CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY, Appellee.

**Assumption of risk.** A servant who has the same opportunity as the
1 master to ascertain and avoid a danger incident to his employment,
assumes the risk by accepting and continuing in the service.

**Contributory negligence.** An engineer charged with the duty of
2 keeping in order and ready for use chemical fuses carried in his
cab, is negligent in failing to use proper precautions to prevent
accidental ignition and injury therefrom.

*Appeal from Polk District Court.*—HON. S. F. PROUTY,
Judge.

SATURDAY, ÁPRIL 9, 1904.

· ACTION to recover damages for a personal injury occasioned, as alleged, by the negligence of defendant. At the close of the evidence for plaintiff, there was a directed verdict in favor of defendant. Plaintiff appeals.—*Affirmed.*

*Ryan, Ryan & Ryan,* for appellant.

*Carroll Wright* and *J. I. Dille,* for appellee.

BISHOP, J.— For twenty years or more prior to the time of the accident of which he complains, plaintiff had been a locomotive engineer in the employ of the defendant company.
1. ASSUMPTION For ten years or more he had been required, in
OF RISK. common with other enginemen in the employ of the company, to carry on his engine a quantity of fuses, to be used as necessity might require in giving emergency signals. A fuse is described as being a tube several inches in length, filled with chemical substances, and capable, when ignited, of giving off different colored lights. One end of

the tube is prepared for the purpose of ignition, and ignition is accomplished by friction. Until desired for use, a cap protects the end thus prepared. No question is made but that the requirement of the company was a reasonable and proper one, and that it had been acquiesced in by plaintiff without complaint or protest is conceded. The fuses were such as were in customary use, were not defective in construction, and it is not pretended that, in themselves, or when properly handled, they were dangerous. Plaintiff says he was familiar with the use of fuses, and knew that friction only was required to produce ignition when once the cap was removed. He further says that, while he did not know that the caps would come off unaided, he did know that if a cap came off, and turned around and rubbed against the friction end of the fuse, ignition would follow. The engine in use by plaintiff had been operated by him for about four months prior to the accident. When he took charge of it, he made an examination as to its equipment, and this in response to a rule of the company, which required that all enginemen, " whose duty shall require them to give signals, must provide themselves with the proper appliances, and keep them in good order, and always ready for immediate use." It appears that engineers in the employ of the company carried the fuses on their engines at such place in the cab or on the tender, and in such receptacle, as they might select. On the engine taken charge of by plaintiff, he found the fuses in an open box fastened up in the cab back of the engineer's seat, and close to the roof — the long way of the box being crosswise of the cab. He observed that the fuses were laid in the box loose, without packing, and that they were about two inches shorter than the box. He counted them and returned them to the box, and, not having occasion to use any, he thereafter paid no further attention to them. The accident occurred while the train was running between stations, and was caused by the ignition of the fuses in the box, whereby the cab became filled with gases and fumes arising from the burning chemicals. And

it is the contention of plaintiff that he was unable to escape; that he was compelled to breathe such gases and fumes into his lungs in greater or less quantity, making him sick, so that he was unable to continue his employment, and permanently impairing his health.    It is not certainly known what was the immediate cause of the accident.    Plaintiff says that at the time it occurred his engine was running about sixty-five miles an hour; that there was a good deal of side motion to the swiftly running engine, the oscillation being sufficient at times to throw the engineer off his seat; that the fuses would have been agitated and moved by such motion.    It is most probable that the swaying of the engine caused the loose fuses to slide from one end of the box to the other; that in the course thereof the protecting caps on one or more became loose and worked off, and that the subsequent sliding caused sufficient friction to produce ignition.    This conclusion accords with the view taken by counsel for both parties.

Accepting such to be the situation — and the whole case is comprehended therein — we are brought to inquire whether the facts appearing make out a case of actionable negligence, as charged, against the defendant company, and, as well, whether it is disclosed from such facts that plaintiff was himself free from negligence contributing to his accident and injury.    Turning to the petition, the substance of the charge of negligence relied upon is that the fuses were left in the box loose and unprotected, and with no packing or other device to hold them securely in place, and, further, because the box was improperly constructed, being longer than the fuses, and thus admitting of friction by the sliding of the fuses therein.    That it was the duty of the defendant company to furnish plaintiff with reasonably safe appliances and instrumentalities, having in mind the character of his employment, may be accepted as the general rule of law by which primarily the rights of the parties are to be tested. And where the use of any appliance or instrumentality involves special or hidden danger, of which the employe is

ignorant, or is unfamiliar with, it is the duty of the master
to advise him respecting such danger. Turning the subject
around, if defect there be in a proper appliance or instrumen-
tality, or if there be danger in the handling or in the use
thereof, and the employe is advised in advance of such defect
or danger, and continues to carry or make use of the appli-
ance or instrumentality without complaint or protest, although
time and opportunity is afforded him so to do, then, generally
speaking, he is said to have assumed the risk, and he cannot
recover in the event an accident does occur. So, too, where
an employe is called upon to deal with an appliance or instru-
mentality, and, being familiar with the use thereof, he fails
to exercise due care, whereby an accident results, he may not
recover damages occasioned by such accident, because in-
volved therein is negligence on his own part. The foregoing
are all familiar principles of law, and require no citation of
supporting authority. It does not appear by whom the box
in the cab was constructed and put in place, nor does it ap-
pear who originally placed the fuses in such box. Constru-
ing the situation most favorably to plaintiff, we are bound to
assume that such was done by direction of the defendant
company. That it was unsafe to carry loose fuses in a box,
of such length as to permit of sliding and possible ignition,
hardly admits of a question. Such being the facts, negli-
gence on the part of the defendant company may very well
have been predicated thereon, and manifestly the question was
a proper one to go to the jury.

But conceding the negligence of defendant, a recovery
is not authorized, as we have seen, if there was an assumption
of the risk of accident by plaintiff, or if there was a failure on
his part to exercise due care. And these, we think, appear
from the record before us. First as to the assumption of the
risk. Plaintiff knew when he took charge of the engine
what were the precise conditions respecting the box and the
fuses therein contained. He knew that the motion of the
engine while running would cause the loose fuses in the box

to slide from one end and thereof to the other. He knew the character of the fuses, and what was the probable consequence of the sliding motion. Accordingly, he was made fully aware of the condition involving negligence on the part of defendant, and for months he continued in his employment without complaint or protest. " The principle is that, where the servant has as good an opportunity as the master to ascertain and avoid the danger for himself, he will have no recourse against the master in case he is injured thereby, and he accepts the employment upon this implied condition." Such is the general rule as applied to cases of the character of the one before us. Buswell on Personal Injuries, page 456. See, also, *Koontz v. Railway,* 65 Iowa, 226; *McKee v. Railway,* 83 Iowa, 616; *Trcka v. Railway,* 100 Iowa, 205; *Stockwell v. Railway,* 106 Iowa, 63.

Contributory negligence on the part of the plaintiff is apparent from the fact that, notwithstanding his knowledge of the negligent condition alleged, and that danger was to be apprehended therefrom, and notwithstanding it **2. CONTRIBUTORY NEGLIGENCE.** was made his duty by a rule of the company to keep the fuses " in good order and always ready for immediate use," he wholly failed and neglected for months to adopt any measure or take any steps to guard against accident or to protect himself from danger. He says his cab was supplied with waste, and that he could have easily packed the fuses therewith, and thus have prevented motion being communicated thereto. To have adopted such simple precaution would have made the accident impossible. Having knowledge of the conditions out of which the danger arose, and being charged with a duty, his failure to adopt any precautionary measure was negligence, such as to bar a recovery.

It follows that an instructed verdict was warranted, and the judgment is AFFIRMED.