Carston M. Kock, Appellant, v. Clinton Chair Co. and Harry Gabriel, Appellees.

**Master and Servant:** ASSUMPTION OF RISK. Where the unsafety of a place in which a servant is at work is known or is as apparent to him as to the master, the servant assumes the risk of accident. As where the servant was assisting in hoisting material by means of a rope and pulley to the upper floor of a building on which he was working, and knew that the guard rail about the shaft was fastened at one end by being dropped into a slot, he assumed the risk incident to the lifting of the rail out of the slot in hoisting the material, thus causing his fall into the shaft.

*Appeal from Clinton District Court.*—Hon. A. J. House, Judge.

Friday, November 19, 1909.

Action for damages resulted in a directed verdict for defendant and judgment thereon. The plaintiff appeals. *Affirmed.*

*A. W. Walliker,* for appellant.

*L. F. Sutton* and *Ellis & McCoy,* for appellees.

Ladd, J.—The Clinton Chair Company is a corporation engaged in the manufacture of chairs, and Gabriel is its president and general manager. The business was conducted in a three-story building and basement. About half way back, and near the south side, was an elevator shaft seven or eight feet square, extending from the basement to the top floor, and in which goods were hoisted. There

was no elevator, but, instead, a two-inch rope and pulley were used. The plaintiff had laid an iron pipe on timbers fastened in the wall at the top of the shaft, and to this the pulley was attached by a chain. Around the shaft on the third floor was a barricade, which on the north side consisted of a two by four scantling or guard rail bolted to an upright four by four scantling at the northeast corner, and resting in a slot cut in the top of a four by four post at the northwest corner. This two by four scantling was waist high, and was removed by lifting it out of the slot into an upright position, and fastening it with a pin run through it and the four by four. In hoisting goods, a bundle was hooked on the end of the rope. A man on the first floor pulled on the other end, while another on the third floor floor leaned over the two by four guard and helped pull it up. If very heavy, as barrels, the guard was lifted up and the articles swung to the floor. If not very heavy, the bundle was taken over the guard rail. The plaintiff had worked for the company as janitor from January, 1907, until some time in April, when he began putting up chairs, but a part of his duty was to assist on the third floor in hoisting goods. Prior to August 14, 1907, he had done so fifty or sixty times, and was familiar with the operation of the rope and pulley in the elevation of materials, as he had prepared the device. In the afternoon of that day a bundle of chair backs was being elevated. Plaintiff, as usual, leaned against the guard rail, and was assisting in pulling the bundle up, when it swung under the scantling, lifted it from the slot, and precipitated him far enough in the elevator shaft and with sufficient force to injure his back. He was aware that the bundles swung about in being elevated, and observed the one last mentioned doing so. The particular neglect charged was the omission to have fastened the end of the two by four scantling in the slot, so that a bundle could not lift it therefrom. The trial court was of opinion that, if the device was dangerous because

of this omission, the plaintiff assumed the risk, and this is the only question argued.

That plaintiff knew the end of the guard rail rested in a slot four inches deep and might be lifted out is admitted. Indeed, he bored a hole in it and the post at the other end, so that it could be pinned open. Moreover, he put up the pulley and rope, and knew that bundles in going up would swing from side to side. He was a man thirty-two years of age, had worked as a carpenter, and must have known that if a bundle when being hoisted swung under the scantling and the pulling was continued, it was likely to lift the end from the slot. No warning or instructions from his employer could have enlightened him on that point, nor was it necessary to advise him that if, with a bundle under the railing, the force applied in lifting it exceeded that downward of the party leaning on the railing, the end would likely be removed therefrom. Surely there was no obligation to warn an experienced workman of his age that if unequal forces are applied from opposite directions, motion will be likely in the direction of the lesser force. But, notwithstanding such knowledge, appellant contends the evidence was such as to leave in issue whether he appreciated or ought to have appreciated the danger. What was this danger? Manifestly that of falling forward into the open shaft. As he was leaning that way against the rail, he must have known that upon its removal he would be likely to lose his balance, and this over the open shaft. Certainly he would fall in no other direction, and he must have appreciated the peril of losing his balance over the open shaft extending down to the basement. The conditions under which he worked, as well as the danger due to not fastening the two by four guard, were as apparent to him as they could well be to the master, and under these circumstances the authorities generally deny the right of recovery. *Calloway v. Agar Packing Co.,*

129 Iowa, 1; *Flockhart v. Hocking Coal Co.,* 126 Iowa, 576; *Crane v. Ry.,* 124 Iowa, 81.

There was no error in directing a verdict for the defendants. *Affirmed.*