C. H. Stephenson, Administrator of the Estate of Malcolm H. Gillott, Deceased, Appellee, v. Sheffield Brick & Tile Company, C. C. Carhart and Frank Stewart, Appellants.

**Master and servant:** NEGLIGENCE: UNGUARDED MACHINERY: ASSUMPTION OF RISK. Failure of the owner or other person in charge of machinery to supply proper guards for the protection of workmen as required by statute is negligence; and an employee, although he knows and appreciates the danger resulting from the operation of machinery without such appliances, does not thereby assume the risk.

**Same:** INSTINCT OF SELF-PRESERVATION. Where there were no eyewitnesses to an accident in which an employee may or may not

have been guilty of contributory negligence, the natural instinct of self-preservation may be considered as bearing upon his conduct.

**Same:** MACHINERY GUARDS: STATUTE. The statute requiring machinery to be properly guarded contemplates such a guard as will reasonably accomplish the purpose of the statute.

**Same:** INSTRUCTIONS. The statute does not define the kind of guards to be placed around machinery but requires that the same must be provided with proper guards, and this becomes a question of fact for the jury, unless it plainly appears as a matter of law that the machinery was or was not properly guarded.

**Same:** CONTRIBUTORY NEGLIGENCE: INSTINCT OF SELF-PRESERVATION. Where the circumstances of an accident are such that the court can not say as a matter of law that the servant was guilty of contributory negligence in occupying the position he did when injured, the presumption that he was in the exercise of due care for his own safety may be considered on the question of negligence.

**Same:** CONTRIBUTORY NEGLIGENCE. The mere fact that a servant chooses the more dangerous of two methods of doing a given work does not as a matter of law constitute contributory negligence.

**Same:** ASSUMPTION OF RISK. Where an employee, as in this case, had only worked for a few days about the machine by which he was injured, and had not been instructed as to the dangers incident to its operation, it can not be said as a matter of law that he knew and appreciated the risk.

**Same:** DAMAGES: INSTRUCTION. Where the only material difference between an instruction as to the award of damages given by the court and that requested was that by the request the jury was required to capitalize the amount awarded, the requested instruction was properly refused.

**Evidence:** *Res gestae*: Statements of an injured employee made immediately after the accident and concerning the same are admissible as part of the *res gestae*.

**Same:** CONCLUSION. A witness should not be permitted to state whether the machine by which an employee was injured was properly guarded; as that is a question for the jury to determine.

**Same:** USE OF SIMILAR MACHINES BY OTHERS. The fact that other manufacturers were using similar machines without guards other than those used by defendant did not relieve the defendant from liability.

*Appeal from Franklin District Court.*—HON. CHAS. E. ALBROOK, Judge.

FRIDAY, MARCH 10, 1911.

ACTION at law to recover damages for the death of Malcolm H. Gillott, due to defendants' failure to guard a dangerous piece of machinery upon which there were exposed set screws revolving with a heavy shaft. Trial to a jury. Verdict and judgment for plaintiff in the sum of $4,000. Defendants appeal. *Affirmed.*

*Carr, Carr & Evans* and *David Evans,* for appellants.

*R. W. Birdsall, Birdsall & Birdsall* and *B. H. Mallory,* for appellee.

DEEMER, J.—The defendant company is a corporation operating a brick and tile factory in Franklin county, Iowa, and defendants Carhart and Stewart are, respectively, superintendent and foreman of the plant, having full power and management thereof. Gillott began work for defendants in August of the year 1908, but was not required to do any work with machinery or under the buildings until January 25, 1909, at which time he was put in charge of a hoisting machine operated by defendant. He received the injuries from which he died February 2 of the same year, some six or seven days after he began work. Prior to beginning work for defendant, he had been a farmer all his life, and when directed to work about the hoisting machine he was given no particular instructions and was not warned regarding the dangers attending the work. At the time of receiving his injuries, Gillott was attending to his duties about the hoisting machine, which is thus described in the testimony:

It is the machine which hauls the clay out of the pit into the building. The car is drawn from the pit by means of a cable operating around a drum, which is worked by a clutch wheel. The drum is caused to revolve by means of a cog pinion connected with a revolving shaft. The operator of the machine has no control over the shaft which operates the drum. The shaft is located on the front part of the frame of the machine and about eighteen inches from the drum and is about eight feet long. The end of the shaft nearest which the operator stands is held in the frame by a collar around the shaft with set screws in it, and they extend out about three-fourths of an inch beyond the collar. Sometimes in the working of a machine, and after the car reached the pit, the cable would slacken and unwind on the drum and the coils of the cable would have to be straightened. I done this both from the rear and from in front of the machine. It could be done either way.

For a better understanding of this machine we attach a photograph which shows the drum, the shaft, and the set screw:

The set screws were entirely unguarded, unless the angle bar, a part of which is shown in the photograph,

may be considered in the nature of a guard. No eye-witness saw the accident, and the following is the only direct evidence as to how it occurred, save a physical fact or condition which will be hereinafter referred to: "I heard Gillott scream the day he was injured, and I don't think it was five minutes thereafter before I saw him coming downstairs into my room. He sat down on the stairs, and I went to him. I noticed that he was bleeding in the armpit under his arm, and that his coat sleeve was torn off. He said he got caught in the gearing. Said he was pushing the cable over on the drum at the time. I helped him to the engine room and telephoned for a doctor." The physical fact mentioned is shown by the following testimony: "The sleeve of Gillott's coat was found wrapped around the shaft on the hoisting machine, and it was caught by both the set screws. The end of the sleeve near the shoulder was on the set screws. The rest of the sleeve was wrapped around the shaft."

As already stated, Gillott was not directed as to how to do the work of unwinding or winding the cable. Appellant says that he was ordered to do it from the rear of the machine; but this is an evident mistake.

Section 4999-a2 of the Code Supplement of 1907 reads as follows:

It shall be the duty of the owner, agent, superintendent or other person having charge of any manufacturing or other establishment where machinery is used, to furnish and supply or cause to be furnished and supplied therein, belt shifters or other safe mechanical contrivances for the purpose of throwing belts on and off pulleys, and, wherever possible, machinery therein shall be provided with loose pulleys; all saws, planers, cogs, gearing, belting, shafting, set screws and machinery of every description therein shall be properly guarded. No person under sixteen years of age, and no female under eighteen years of age shall be permitted or directed to clean machinery while in motion. Children under sixteen years of age shall

not be permitted to operate or assist in operating dangerous machinery of any kind.

In many cases we have held that a failure to comply with the provisions of this law constitutes negligence. *Kirchoff v. Supply Co.,* 148 Iowa, 508; *Wolff v. Nau-*

1. MASTER AND SERVANT: negligence: unguarded machinery: assumption of risk.

*man Co.,* 128 Iowa, 261; *Bromberg v. Laundry Co.,* 134 Iowa, 38. And we have already held that an employee does not assume the risks incident to the use of a machine which is not guarded as required by statute, although he knows of the unguarded condition and apprehends the danger incident to the use thereof. *Poli v. Coal Co.,* 149 Iowa, 104; *Tyrell v. Cain* (Iowa) 128 N. W. 536. See, also, *Callopy v. Atwood* 105 Minn. 80 (117 N. W. 239, 18 L. R. A. (N. S.) 593.

It is also true, however, that an employee working about an unguarded machine may be guilty of contributory negligence. See the *Tyrrell* case, *supra,* and the decisions cited therein. Ordinarily, this ques-

2. SAME: instinct of self-preservation.

tion of contributory negligence is one of fact for a jury and not of law for the court. In this connection we may also announce the further rule many times stated by this court that where there are no eyewitnesses of a transaction in which a party is injured and in which he may or may not have been guilty of contributory negligence, the natural instincts of self-preservation may be considered as bearing upon his conduct. The rule was stated in this language in *Dalton v. Railroad Co.,* 104 Iowa, 26: "It is a recognized rule of human conduct that persons in their sober senses naturally and instinctively seek to avoid danger. Therefore it must be presumed, until the contrary appears, that the deceased, prompted by this natural instinct, did exercise care in approaching and going upon the crossing and whether the circumstances are such as to overcome the presumption that de-

ceased, prompted by the instinct of self-preservation, did exercise the care required of him, was a question for the jury." See, also, *Rothrock v. Cedar Rapids,* 128 Iowa, 252.

With this statement of the case and of the applicable rules of law, we may now go to the points made for appellant as grounds for reversal. It is contended that there is no testimony that the machine was not properly guarded. The kind of guard to be used is not defined by statute; but we have said that it must be such an one as reasonably accomplishes its purpose. *Kirchoff v. Creamery Co., supra.* The photograph discloses that there was no cover or guard over the set screws which fastened the collar to the shaft, and the only pretense of a guard is the angle bar, to which reference has already been made. A jury may well have found that this angle bar was not placed upon the machine as a guard against the dangers incident to the revolving set screws, but as a brace for a lever which controlled the action of the machine. Indeed, we think the photographs, some of which we do not set out, clearly show that this was the purpose of the angle bar. Surely there was enough to take the case to the jury upon this proposition, even though it can not be said as a matter of law that the machine was unguarded.

3. SAME: machinery guards: statute.

The trial court instructed upon this matter of guards, as follows:

(4) It is the law of this state that it shall be the duty of the owner, agent, superintendent, or other person having charge of any manufacturing or other establishment where machinery is used, to provide all saws, planers, cogs, gearing, belting, shafting, set screws, and machinery of every description therein with proper guards, and a failure to do so is negligence on the part of such owner, agent, superintendent, or other person having charge of such manufacturing or other establishment where the machinery is used.

(5) So, in this case, if you find that the plaintiff has proven by a preponderance of the evidence that the defendant company did own and operate a plant where machinery was used, and that the said Malcolm Gillott was employed therein by the said company for the purpose of working in the plant of said company with, or at, or about a machine where there were set screws and a revolving shaft used in connection therewith, and that said set screws and shaft were unguarded, such conditions existing would constitute negligence on the part of the said defendant company, rendering it liable for any injury to the said Malcolm Gillott resulting from his coming in contact with the said set screws or revolving shaft, if you further find that the plaintiff has proven that the said Malcolm Gillott did not by his own negligence contribute to the said injury, or that the defendant has not proven that the said Malcolm Gillott did assume the risk of such conditions. . . .

(8) The owner of premises on which machinery with set screws and revolving shaft is used or operated should avoid danger to his employees working about or with such machinery by guarding the set screws and revolving shaft used therein.   The employer is not required, however, to insure his employee an absolutely safe place to work, and the duty to furnsh a safe place is performed when the employer has used all reasonable care and diligence to make the place safe; but such reasonable care and diligence would require the employer to fully comply with the requirements of the law.

(9) The burden is upon the plaintiff in this case to establish by a preponderance of the evidence the claim that set screws in question and the revolving shaft were not guarded as required by law, and it is for you to determine from all the evidence before you whether or not the plaintiff has sustained this proposition.   If the plaintiff has failed in this, he can not recover, and you should find for the defendants.

It is said that these instructions, and particularly the eighth, are erroneous for the reason that no rules were given whereby the jury might determine whether or not proper care was taken to guard the machine and no in-

struction was given as to what would constitute a proper

**4. Same: instructions.**

guard. These propositions are to our minds without merit. The eighth instruction is not subject to the criticism lodged against it. The law does not state what the guard must be. It says that such machinery must be provided with proper guards, and, in the absence of ·definition, the question is one of fact for the jury, unless the case be so plain as to call for an expression from the court that the machine either was or was not properly guarded as a matter of law. Had the trial court squarely instructed in this case that the set screws were not properly · guarded as required by law, we should not have been disposed to· criticise the instruction.

III. The thirteenth instruction reads as follows: "(13) In considering this case on the question pertaining to ·due care ànd want of negligence on the part of the deceased, Malcolm Gillott, at the time of the

**5. Same: contributory negligence: instinct of self-preservation.**

injury complained of, you are instructed that positive evidence that the said Malcolm Gillott did not by his own negligence contribute to the injury is not required, where such evidence can not be obtained, as, in this case, it is proper for you. to consider the instincts of men which naturally lead them to avoid danger, as evidence of due care on the part of the said Malcolm Gillott."

This is challenged because of the reference to the instincts of self-preservation. As there were no eyewitnesses of the accident, the instruction is correct unless the physical facts, taken in connection with the other testimony, show without question that the deceased could not have received his injuries except he were in a position where he had no right to be or in such a position that he must be held guilty of contributory negligence in assuming that ·position. The testimony shows that deceased must have been in front of the machine or have reached over the end of the shaft in order that his sleeve may have been

caught upon the set screws. But we can not say as a matter of law that being in either position would have constituted contributory negligence. Any one of many things may have excused him in going in front of the machine, and some of them may have excused his reaching over the journal which carried the shaft. We must assume, then, giving heed to the instinct of self-preservation common to mankind in general, that deceased was exercising due care for his own safety in performing the work he was then doing, and it was not error to give the instruction. Of course, if deceased could not have assumed a position to get his sleeve caught by the set screws without being guilty of contributory negligence, then the instruction was erroneous. But the record does not disclose such a situation.

IV. What we have said in the last preceding subdivision of this opinion answers the proposition that deceased was guilty of contributory negligence as a matter of law. It is not true, as defendant's counsel contend, that where there are two methods of doing a given work, one of which is safe and the other dangerous, the mere choice of the dangerous method constitutes contributory negligence as a matter of law. *Pierson v. Railroad Co.*, 127 Iowa, 13; *Gibson v. Railroad Co.*, 107 Iowa, 596; *Steele v. Grahl-Peterson Co.*, 135 Iowa, 418. Such a situation is properly for a jury, but is not conclusive upon the question of contributory negligence. See authorities last cited above.

6. SAME: contributory negligence.

V. The trial court instructed the jury upon the theory that assumption of risk, if shown, was a defense to the action. Under these instructions the jury found that this defense was not made out. Contention is now made that there should have been a verdict for defendant under these instructions. The claim is without merit. There is no showing that deceased was instructed as to the dangers and

7. SAME: assumption of risks.

no testimony aside from inference that he knew thereof. But a few days had he worked about the machine, and while we may well suppose that he knew of the unguarded screws, of the revolving shaft, and the physical conditions in general, there is no room for inferring as a matter of law that he knew of the risks and dangers attendant upon the doing of his work about the machine, of which he was not advised, and thereafter assumed the risks. *Kock v. Clinton Chair Co.*, 144 Iowa, 548, relied upon by appellant, is not in point. The case in this aspect is ruled by *Stomne v. Hanford Co.*, 108 Iowa, 137; *Vohs v. Shorthill Co.*, 124 Iowa, 471; *Calloway v. Agar Co.*, 129 Iowa, 1; *Meier v. Way*, 136 Iowa, 302; *Anderson v. Railroad*, 109 Iowa, 524; *Brusseau v. Lower Brick Co.*, 133 Iowa, 245, and other like cases.

VI. Upon the question of damages the court gave the following instructions:

(14) If you find for the plaintiff, you will determine from all the evidence before you what amount you will allow him as damages, resulting to the estate of the deceased by reason of his death, and, in determining what amount you will so allow, you should take into consideration the age of the deceased at the time of his death, his occupation at said time, the wages he was and had been earning, the condition of his health at the time, and his ability, if any, to earn money, his expectancy of life, and all these in connection with all the evidence before you, and determine therefrom the probable pecuniary loss to the estate of the deceased caused by his death, and allow the plaintiff such sum, and only such sum, as will compensate the estate for such loss.

This is not complained of; but it is argued that error was committed by the court in refusing to give the following request made by defendant:

(2) If under the evidence you find that plaintiff is entitled to recover, you will then proceed to determine

from the evidence the amount of his recovery; and the measure of recovery, if any, will be the present worth or value of the estate which the said Malcolm Gillott would reasonably be expected to have saved and accumulated if he had lived the natural term of his life. The measure of recovery in cases of this character is not the sum which, when placed at interest, will yield an amount equivalent to the income of the deceased at the time of his death, nor the amount necessary for the support of his family; nor are you permitted to give any consideration to pain and suffering which the deceased may have suffered after his injury and before his death; nor are you permitted to consider in estimating the damages, if any, the grief of his relatives, but, as already stated, it is the amount estimated at its present worth which, under all the circumstances disclosed in the evidence, you believe would have come to his estate at the end of his natural life. In estimating such damages, if any, you award the plaintiff, you may and should consider, so far as is shown by the evidence, the age and occupation of the said Malcolm Gillott, at the time of the injury which caused his death, his bodily health, and ability to earn money, his habits as to industry, thrift, and economy, if any such have been shown, the contingencies of life, such as ill health, nonemployment, increase or diminution in earning capacity as age advances, and all other facts and circumstances in evidence tending to show the amount, if any, that the estate might have accumulated if he had lived out the term of his natural life, and award the plaintiff such a sum, and such sum only, as will be the present worth or value of the loss sustained by his estate by reason of his premature death.

In a general way the one given covers the matters included in the one requested; the difference being that in the one requested the jury was instructed to capitalize the amount awarded as damages. That there was no error in denying the request, see *Lowe v. Railroad Co.,* 89 Iowa, 433, which is directly in point, and also *Andrews v. Railroad Co.,* 86 Iowa, 677.

8. SAME: damages: instructions.

VII.   The only remaining points relate to rulings on
the admission and rejection of testimony.   Complaint is
made of the admission of the testimony as to what was

9. EVIDENCE: *res gestae.* said by deceased almost immediately after
he received his injuries.   That this testi-
mony was admissible as part of the *res gestae* is too clear
for argument.   *Keyes v. Cedar Falls,* 107 Iowa, 509;
*Dunn v. Railroad,* 130 Iowa, 580; *Rothrock v. Cedar Rap-
ids,* 128 Iowa, 252; *Sutcliffe v. Ass'n,* 119 Iowa, 220;
*Alsever v. Railroad,* 115 Iowa, 338.

Defendant produced a witness by the name of Smith
and asked him to tell the jury as to whether or not the

10. SAME: conclusion. machine was properly guarded.   Objection
to this question was properly sustained.
The question was for the jury, and not a matter of opin-
ion for a witness to settle.

The following is taken from the record, which indi-
cates the only doubtful point with reference to rulings on
testimony:   "Q. What do you say as to whether or not

11. SAME: use of similar machines by others. that is a guard that was in general use on
machines of this kind at that time?   (Ob-
jected to as incompetent, immaterial, and
irrelevant.   Objection sustained.   Defendants except.)   Q.
Do you know what kind of a guard for set screws on ma-
chines of this kind was in general use on February 2,
1909?   (Objected to as incompetent, immaterial, and ir-
relevant, and because the defendant can not establish dili-
gence or due care or excuse itself from negligence by
showing that other companies use the same apparatus for
its protection.   Objection sustained.   Defendants except.)
Q. Was this such a guard as was in general use at that
time?   (Objected to as incompetent, immaterial, and ir-
relevant.   Objection sustained.   Defendants except.)"

The witness had been speaking of the angle bar to
which reference has already been made, and, if it had
been such a contrivance as to operate reasonably as a

guard, we should be disposed to hold· that the rulings shown by this record were erroneous. But, as already indicated, we are inclined to say that this angle bar was not in any true sense a guard. At least the jury found that it was not. Under such circumstances, it was immaterial that others were using machines of like character without any other guard than an angle bar. such as was on the machine in question. On the record before us the proposition is ruled by *Metzgar v. Railroad Co.*, 76 Iowa, 387. See, also, *Bryce v. Railroad Co.*, 119 Iowa, 274.

We have gone over the record with care, and, finding no prejudicial error, it follows that the judgment must be, and it is, *affirmed.*

EVANS, J., takes no part.