THOMAS VERLIN, Appellant, v. UNITED STATES GYPSUM COMPANY.

**Master and servant:** NEGLIGENCE: PROXIMATE CAUSE. Failure to properly guard dangerous machinery as required by statute is negligence; and where the plaintiff, while attempting to oil the machinery with which he was at work, slipped on an icy floor and thereby thrust his hand into the unguarded cog wheels of the machine, the defendant's negligence in failing to guard the wheels may properly have been found the proximate cause of the accident.

**Same:** CONTRIBUTORY NEGLIGENCE AS A DEFENSE. Contributory negligence is a defense to an action for injuries resulting from a master's violation of the factory act.

**Same:** ASSUMPTION OF RISK. A servant does not assume the risk of injury from machinery left unguarded in violation of the statute, where it is no part of his duty to provide guards therefore.

**Same:** CONTRIBUTORY NEGLIGENCE. In this action the question of whether plaintiff was negligent in oiling machinery with which he was at work and while it was in motion, and under conditions not necessarily such as to cause apprehension of danger and to suggest the adoption of a different method of oiling machines, was for the jury.

**Same.** One is not necessarily negligent in adopting a dangerous method of accomplishing a purpose when a safer way is open to him, but this question depends on the circumstances. In this case the plaintiff was injured while performing a service in the manner shown him by the foreman, and the question of whether the injury was the proximate result of some fault on his part was for the jury.

*Appeal from Webster District Court.*—C. G. LEE, Judge.

THURSDAY, APRIL 4, 1912.

ACTION for damages resulted in a directed verdict for defendant. Judgment was rendered thereon, and plaintiff appeals.—*Reversed.*

*Healy & Healy,* for appellant.

*B. J. Price* and *Clark & Hutchinson,* for appellee.

LADD, J.—The plaintiff was employed by the defendant at what was known as "the Mineral City Mills" to wash boilers, and do such work as might be assigned him by the foreman. The pump which supplied water for the mill was located about one-quarter mile away, and was operated by a motor. This motor and the pump were in a small building eight feet wide by ten feet long, with window and door, and nearer one side than the other, but there was room enough to pass between them and the sides. The foreman accompanied plaintiff to this building, and, after showing him how to oil the pump and motor, instructed him to do so twice a week. He then took an oil can, having a nozzle about three inches long, and, after stopping the machine by the use of the switch, oiled the pump. He then started the machine, and oiled the motor while it was in motion. The plaintiff did the oiling as required several times, and on November 28, 1909, put in a valve and oiled the pump, and then, after starting the motor, proceeded to oil it. While doing so his foot slipped, and he threw out his hand to save himself from falling, when it was caught between two cogwheels which transmitted the power from the motor to the pump, and was seriously injured. One of these wheels was large and the other small. Both were entirely unguarded. The floor seems to have been sustained

by posts, and there was "a little ice on the floor, just enough to make it slippery." It was usually wet, and, as the weather was cold, became icy. Plaintiff had cleaned the ice away several times to enable him to open the door, but did no more, and had not been directed to care for the building. He testified that he did not see anything wrong about oiling the motor in the way he did, and that he did so because he thought it safe, and the foreman had shown him that way to do it, and that his mind was wholly on the work at the time he received the injury. On cross-examination he said that he knew there were cogwheels within a few inches of his hand which were running at the time, and that, if he got his hand in between them, it would be hurt, that he did not think about falling at the time, but, of course, knew that, if he fell toward the machine, he would likely be hurt.

I.  As the statute required the cogwheels to be proper

I. MASTER AND SERVANT: negligence: proximate cause.

ly guarded and as defendant had provided no guard whatever for them, it was negligent.  *Kirchoff v. Creamery Co.,* 148 Iowa, 508; *Stephenson v. Sheffield Brick and Tile Co.,* 151 Iowa, 371.

But it is said that, though negligent in this respect, such negligence might not have been found the proximate cause of the injury. What was said in *Buehner v. Creamery Package Co.,* 124 Iowa, 445, and *Miller v. Cedar Rapids Sash & Door Co.,* 153 Iowa, 735, disposes of this contention. See, also, *Balzer v. Warring* (Ind.) 95 N. E. 260, and *Bales v. McConnell,* 27 Okl. 407 (112 Pac. 978). Appellee undertakes to distinguish the cited cases from that at bar by pointing out that in these nonresponsible agencies were said not to intervene between the unguarded machinery and the injury, and, at most, to have been concurrent therewith, while here, as is alleged, the injury was through plaintiff's fault.

If there is such difference, then surely there can be no

recovery, for contributory negligence is a defense in actions for damages resulting from the violation of the factory act the same as in others. But, as will hereafter appear, the issue as to whether plaintiff was negligent was for the jury to determine, and, if it be found that he was not negligent, then, under the above decisions, the omissions to properly guard the cogwheels might have been found the proximate cause of plaintiff's injuries, and that issue was for the jury.

2. SAME: contributory negligence as a defense.

II. Nor can it be said that plaintiff had assumed the risk of being injured by the unguarded cogwheels. *Poli v. Numa Block Coal Co.,* 149 Iowa, 104; *Stephenson v. Sheffield Brick Co.,* 151 Iowa, 371. The statute exacting proper guards for specified pieces of machinery, including cogwheels, was enacted for the protection for employees exposed to danger therefrom, and to recognize assumption of risk as a defense in such cases where it was not the employer's duty to remedy the defect would defeat the purpose of the law. The distinction between such a case and one arising under a statute of general application is manifest. See *Martin v. Railway,* 118 Iowa, 148. Any doubt that might have existed was disposed of by chapter 219 of the Acts of the Thirty-Third Assembly, however, and, as according to the evidence it was no part of plaintiff's duty "to make repairs or remedy defects," he can not be said to have assumed the risk. *Miller v. Cedar Rapids Sash & Door Co.,* 153 Iowa, 735. The assumption in appellee's argument that it was a part of plaintiff's duty to keep the floor clear of ice is contrary to the evidence.

3. SAME: assumption of risk.

III. The main contention of appellee, and doubtless that on which a verdict for defendant was directed, is that plaintiff was guilty of negligence which contributed to his injury. Undoubtedly, he was an experienced laborer, having worked about pumps and other machinery fourteen years. The foreman of defendant had shown him by demonstration how to oil

4. SAME: contributory negligence.

both the pump and motor.   Why the latter should have been in motion before being oiled is not explained.   Possibly it was because oil then would be taken better.   Of course, if plaintiff in oiling the motor when in motion was careless, the fact that the foreman adopted the same method would not excuse him, but that the foreman had advised him to do the work in that way was a strong circumstance to be considered in determining whether, in doing so, he was careless. Quite naturally, an employee is inclined to rely upon instructions or information of his superior in charge as to the manner of performing the duties exacted of him.   The tendency thereof is to lull him into security and influence him to yield, without the investigation he otherwise would have made, to such superior's judgment with respect to the method to be pursued in doing what is required.   See *Hardy v. Railway,* 149 Iowa, 41.   The floor was somewhat icy, but, as remarked in *Fitzgerald v. Connecticut Paper Co.,* 155 Mass. 155 (29 N. E. 464, 31 Am. St. Rep. 537); "Common experience teaches us that the degree of slipperiness of ice is not always determinable from an ocular inspection of it."   According to plaintiff's testimony, the condition of the floor was not such as necessarily to have caused apprehension of danger on his part, and whether its appearance was such that he should have adopted another method of oiling was for the jury to decide.

That there was danger in oiling the motor when in motion, and such danger might have been avoided by stopping it when this was being done, does not necessarily stamp the act of oiling it when in motion as negligent.   A person is not necessarily negligent in adopting a dangerous way of accomplishing an object when a safer way is open to him.   *Gibson v. Railway,* 107 Iowa, 596; *Stephenson v. Sheffield Brick and Tile Co.,* 151 Iowa, 371; *Morris v. Packing Co.,* 124 Iowa, 748; *Pierson v. Railway,* 127 Iowa, 13; *Steele v. Grahl-Peterson Co.,* 135 Iowa, 418; *Graham v. Town of Oxford,* 105 Iowa,

5. SAME.

705; *Nichols v. Town of Laurens,* 96 Iowa, 388; *Huggard v. Refining Co.,* 132 Iowa, 724. See *Taylor v. Felsing,* 164 Ill. 331 (45 N. E. 161). Whether this is so necessarily depends on the circumstances, and in this case we think that, as plaintiff was injured while oiling the motor in the manner shown him by the foreman, the issue as to whether the injury was the proximate result of some fault on his part should have been submitted to the jury. The facts of the case are readily distinguishable from those of decisions on which appellee relies. See *Gorman v. Des Moines Brick & Tile Co.,* 99 Iowa, 257, where plaintiff knew that the wrench was likely to slip from the nut, and that, if it did, he likely would be injured. In *Sutton v. Bakery Co.,* 135 Iowa, 390, the danger was apparent, and there were no instructions. In *Erdman v. Deer River Co.,* 182 Fed. 42 (104 C. C. A. 482), the complainant, conscious of a safe and a dangerous way, thrust his arm into a known place of great danger, and was injured, and, of course, could not recover. In the case at bar the plaintiff supposed he could do the work as he did in safety, and, as he proceeded therein in accordance with the instructions of the foreman in charge, we are of opinion that an issue of fact as to whether he was negligent was raised by the record.

The issue with others discussed should have been submitted to the jury.—*Reversed.*