NELLIE M. MURRAY, ADMINISTRATRIX OF THE ESTATE OF CHARLES R. MURRAY, DECEASED, Appellant, v. M. H. DALEY, Appellee.

**Master and servant:** PERSONAL INJURY: EVIDENCE. In this action for injury to a workman while brushing the shavings away from the knives of a planer with which he was at work, evidence that in putting a long timber through the machine it was necessary that it go over the knives at an angle, was admissible as tending to show that more shavings were thus made and that this fact required cleaning the same away.

**Same:** USE OF DANGEROUS MACHINERY: GUARDS:. EVIDENCE. It is competent to show by citing particular instances that there are guards in use for the protection of workmen about a machine, required by the factory act to be provided with guards, which will not materially interfere with its efficiency.

**Same:** USE OF PROPER GUARDS: STATUTES. The factory act does not require an employer to use the latest and most improved machinery, or any particular kind, provided he uses such care in the selection of the same as a reasonably prudent man would exercise; but the act does require him to use the most efficient and best known guards for protecting workmen from the dangers incident to the operation of the machinery, and he must know what constitute proper guards, install and keep the same in repair, although he is not required to buy every kind of guard that may be on the market.

**Same:** UNGUARDED MACHINERY: BURDEN OF PROOF: INSTRUCTION. Where an injury occurs from the use of a machine unguarded as

required by the statute, as a rule it is incumbent on the employer to show that there was no guard which was practical that would have prevented the injury; but where the servant assumed the burden of showing that the machine was not guarded as required by the statute and offered evidence in support thereof, an instruction practically withdrawing the evidence and advising the jury that defendant was not bound to install the latest and most improved guards or appliances, and that his duty was performed if he furnished such guards and appliances as were reasonably safe and proper, was, under the circumstances prejudicial error.

Same: INSTRUCTION. In an action for a personal injury resulting from the unguarded condition of a machine required by the statute to be provided with proper guards for the protection of workmen, the court should advise the jury what sort of a contrivance would in law be considered a proper guard, or at least define the requirements of the statute so that the jury would be able to say whether the machine was properly guarded. The instruction in the instant case was insufficient in this respect.

Same: NEGLIGENCE OF VICE PRINCIPAL. Where an experienced man in charge of the planing machine by which plaintiff was injured while removing shavings, operated the machine and removed the shavings in the presence of plaintiff without using the guards provided, and there was evidence that he never used the guard because he deemed it a nuisance, he stood as the representative of the master whose duty it was under the statute to provide a suitable guard, and the master could not say that the negligent act of his representative was that of a co-employee.

Same: ASSUMPTION OF RISK: INSTRUCTION. Where the plaintiff alleged that the machine by which he was injured was dangerous within the meaning of the factory act, the court should have instructed substantially in the language of the statute that plaintiff should not be deemed to have assumed the risk of defects in the machine, known to both himself and the master, by continuing in the work, unless in the ordinary course of his employment it was his duty to remedy the defects.

Same: NEGLIGENCE: WARNING. Where an employee is given more hazardous work than that for which he was employed and accustomed to, it becomes the duty of the master to warn him of the dangers incident to the new employment, failure to do which is negligence.

Same: RELATION OF MASTER AND SERVANT: SCOPE OF EMPLOYMENT. Where plaintiff was set to work about a planing machine with an

experienced fellow servant in charge, and with mere general direc-
tions as to what to do, and as occasion required the employee in
charge removed the shavings in plaintiff's presence without using
the guard, plaintiff's attempt to remove them in the same manner
was an act within the scope of his employment.

Same: CONTRIBUTORY NEGLIGENCE. An inexperienced employee set to
10. work with a machine in company with a fellow servant in charge
of the same, and having no knowledge of his danger and with-
out warning, is justified in believing it to be safe; and his con-
duct in following the example of the more experienced servant in
operating the machine will not render him guilty of negligence as
a matter of law.

Same: CONTRIBUTORY NEGLIGENCE: STATUTE. Under the provisions of
11 the factory act the doctrine of assumption of risk is not a defense,
unless it amounts to contributory negligence; and a stronger show-
ing is required to establish contributory negligence under the
statute then at common law.

*Appeal from Floyd District Court.*—HON. C. H. KELLEY,
Judge.

TUESDAY, MARCH 24, 1914.

ACTION to recover damages for injuries received by
plaintiff's intestate while working about a planer or straight-
ener in defendant's shops. Trial to a jury, verdict and
judgment for defendant, and plaintiff appeals.—*Reversed.*

*J. H. Lloyd* and *Frank Lingenfelder,* for appellant.

*H. J. Fitzgerald,* for appellee.

DEEMER, J.—This action was brought by Charles R.
Murray, during his lifetime, to recover damages for injuries
sustained by him while in defendant's employ, working with
or about a machine variously styled a "buzz planer," a "joint-
ing," and a "straightening machine." After the trial in the
lower court, plaintiff died, and his administratrix was sub-
stituted. It is not claimed that death resulted from the

injury, and on that account it will be more convenient to treat the case as if Charles R. Murray were plaintiff, and we shall use that term during the course of the opinion, meaning thereby Charles R. Murray, the injured party.

Until a few years before his death, plaintiff had been a farmer; but after leaving the farm he became a common laborer, and just prior to the time of receiving his injuries had been shoveling coal and unloading cars for various parties, before entering defendant's employ. He was employed by defendant to work in his factory three days before his accident, receiving $1.50 per day as wages. During the first of these three days, plaintiff was at work cutting harrow teeth and driving them into bars, working about a boring machine for boring holes in bars for harrow teeth, and assisting in planing harrow bars. On the afternoon of the third day and the morning of the fourth, he was directed by defendant to assist one Lusk with the straightening and jointing of some wagon tongues upon the jointer, or straightener, or planer in question. The men had nearly finished running something like two hundred tongues over the machine, when plaintiff received his injuries. Plaintiff had never worked with such a machine, although it seems that he had worked about a machine shop, where such machines were in use, for ten or eleven months before he entered defendant's employ. For the purposes of this case we must say, under the record, that plaintiff was entirely unfamiliar with such machines as the one in question, did not know of any special danger incident to their use, and was unfamiliar with the hazard in working therewith. Defendant showed the two men, plaintiff and Lusk, how to run the tongues over the machine and across the knife blades, and as to how to use what is called a guard while running the timbers through the machine. Plaintiff was not warned of any danger or given any special instructions regarding the use of the planer. Lusk had had some experience with such machines and knew how to manage them.

It seems that the timbers with which the employees were

working were wet, and to some extent covered with ice or snow, and that shavings and this ice and snow gathered upon the table of the machine, and that these shavings, etc., had to be brushed off in order that the work might be properly done. Lusk had done this work of brushing off with his hands several times while they were engaged in the work, but at the particular time in question, plaintiff being nearest the knives, he undertook to brush off the shavings and ice. He had on

what are called glove mittens, and, taking a stick eight or ten inches long, he undertook to get rid of the shavings, etc., as Lusk had done, and in so doing caught his hand in the planer knives, which were running at great velocity, and lost the thumb and forefinger and the use of the middle finger of his right hand.

The only method of reproducing the machine is to attach a photograph, which we have taken from the record, and here insert. This photo was taken at an angle of about 45 degrees, and it shows what is claimed to be a guard upon the machine,

and the blades or knives of the planer were covered with white chalk in order that the camera might show them more distinctly.

In addition to charging defendant with negligence in failing to warn and instruct plaintiff regarding the use of the machine, plaintiff also pleaded that:

The said planing machine was not properly guarded, as by law required, or in any manner guarded. That the said machine, as maintained and operated by the defendant, was a dangerous machine. That the defendant was negligent in maintaining and operating said planer in the condition in which it was in, and in permitting the plaintiff to operate said planer while in a dangerous condition and improperly guarded. That said machine, as operated and maintained by the defendant, was faulty and dangerous for there were no feed rollers attached to said machine, no blower, no hood guard, and no cover to said machine.

Defendant admitted that plaintiff received the injuries complained of, denied that the machine was a dangerous or unguarded one, denied that plaintiff was injured while performing his duties, pleaded contributory negligence, and further denied: "That said machine, as operated and maintained by him, was faulty and dangerous for the reason that there were no feed rollers, blower, hood guard, nor cover attached to said jointing or straightening machine, and for further answer states that such appliances are not used in connection with the operation of said machine."

On these issues the case was tried, resulting in a verdict and judgment for defendant, and plaintiff appeals.

It will be observed that plaintiff's pleading is broad enough to cover injuries as at common law without reference to any statute, and that it also states enough facts to bring the case under the factory act (Code Suppl. section 4999-a2), and Acts 33d General Assembly, chapter 219. These latter enactments read as follows:

Code Supplement, 1907, section 4999-a2:

It shall be the duty of the owner, agent, superintendent or other person having charge of any manufacturing or other establishment where machinery is used, to furnish and supply or cause to be furnished and supplied therein, belt shifters or other safe mechanical contrivances for the purpose of throwing belts on and off pulleys, and, wherever possible, machinery therein shall be provided with loose pulleys; all saws, planers, cogs, gearing, belting, shafting, set screws and machinery of every description therein shall be properly guarded. No person under sixteen years of age, and no female under eighteen years of age shall be permitted or directed to clean machinery while in motion. Children under sixteen years of age shall not be permitted to operate or assist in operating dangerous machinery of any kind.

Chapter 219, Acts 33d General Assembly:

That in all cases where property, works, machinery, or appliances of an employer are defective or out of repair, and where it is the duty of the employer from the character of the place, work, machinery or appliances to furnish reasonably safe machinery, appliances or place to work, the employee shall not be deemed to have assumed the risk, by continuing in the prosecution of the work, growing out of any defect as aforesaid, of which the employee may have had knowledge when the employer had knowledge of such defect. except when in the usual and ordinary course of his employment it is the duty of such employee to make the repairs, or remedy the defects. Nor shall the employee under such conditions be deemed to have waived the negligence, if any, unless the danger be imminent and to such extent that a reasonably prudent person would not have continued in the prosecution of the work; but this statute shall not be construed so as to include such risks as are incident to the employment. And no contract which restricts liability hereunder shall be legal or binding.

The main testimony in the case was directed to the question as to whether the machine was properly guarded, and

for some reason the trial court did not instruct upon the
question of plaintiff's being put to work about the dangerous
machine without warning or instruction as to the dangers
incident to the use thereof, although this issue was made by
the pleadings, and there was testimony to support it.   De-
fendant claimed that the machine was properly guarded,
although plaintiff in his proofs undertook the burden of
showing that it was not, and at no place did the court attempt
to cover the other issue in the case.

The guard which defendant insists was sufficient to an-
swer the requirements of the law and of the safety appliance
acts is shown in the photo.   It is the broad board which
partially covers the mechanism, outside the frame, and par-
tially covers the revolving knives.   There was no spring
attached to this board; and the operator had to push or hold
it over against the lumber while going through the machine,
or against the upright board and gauge and over the knives
when any cleaning was to be done, and in the latter event
some of the machinery would be exposed to a man working
about it.   In other words, it was not automatic; nor was the
machine equipped with a hood or a blower pipe.

It is strenuously insisted that the machine was properly
guarded, but plaintiff claimed and introduced testimony to
show that the machine itself was dangerous because the
blades of the planer were not set into a shaft with a round
head instead of a square one, thus allowing one to get his
fingers into the space between the table and the knives; that
it should have been equipped with a hood and also a blower;
and that, if it had been so equipped, an operator would have
been protected, and that the blower would have automatically
removed the shavings, dirt, and debris, so that plaintiff would
not have been compelled to use his hands, and that there are
numerous devices or guards used upon such machines, which

amply protect the operators thereof.  He introduced into the
record cuts of some of these devices, which we here set out:

#### Exhibit "A"

Jonès Guards

## Exhibit "C"

#### Exhibit "B"

Badger Jointer Guard

Champion Automatic
Flexible Safety Guard

Much, if not all, of the testimony offered by plaintiff
with reference to the use of guards, hoods, blowers, etc., upon
such machines, was finally stricken from the record on the
theory that such evidence related to "buzz planers," and was
not applicable to "jointers and straighteners," and was there-
fore incompetent.  Counsel for appellee now insist upon this
theory and say that appellant is raising a false issue when he
attempts to prove that there are adequate and sufficient guards
for "buzz planers."  The trouble with this contention is two-
fold.  In the first place, plaintiff's witnesses used the terms
"buzz planers," "straighteners," and "jointers" indis-
criminately, and in their testimony specifically referred to
guards for such a machine as the one upon which plaintiff
was injured.  In its main features the case turns upon this
proposition, and, as appellee's counsel seem to be mistaken
as to the record, their argument in support of the rulings
of the trial court fails of its purpose.

In this connection it should also be stated that the machine was so placed in the building that the wagon tongues which were being straightened and joined could not be made

1. Master and servant: personal injury: evidence.

to go into the machine squarely until they had gone so far over the planer that the other end could be gotten past a partition or wall. This feature of the case is only important, however, on the theory that in going over the planer at an angle more shavings were made than if it had gone squarely over it, and that this brought about the necessity for cleaning the bed of the table. There is little direct testimony to support this conclusion, but we think that the testimony should have been received, and allowed to stay in the record.

Some of the plaintiff's expert woodworkers were permitted to testify as to hoods, guards, rollers, blowers, etc., used on like machines at other places in the country, especially

2. Same: use of dangerous machinery: guards: evidence.

at a factory in Minnesota, and that these had a tendency to protect the workmen, because they assisted in removing the shavings, dust, dirt, etc., and that some of them were an adequate protection to the workmen because they automatically covered the planer when no timber or other material was passing through the machine. Some of these guards are shown in the cuts hitherto set out. Most of this testimony was finally stricken from the record on defendant's motion, and this we think was error.

In order to prove that a machine was unguarded, under our factory act, it was competent for plaintiff to show, by men with proper qualifications, that there were and are guards in use which will protect men working about the machine, and not substantially interfere with the efficiency of the machine, and this they may do by citing particular instances.

Our factory act requires all such machines to be properly guarded, and the intent of that law is to require the use of

the most efficient and best known guards for the purpose.

True, the employer is not required to try

3. SAME: use of
proper guards:
statutes.

every guard which may be put upon the market, but he is, as we think, bound to the exercise of care and diligence in the discovery and equipment of his machines with suitable and efficient guards. The safety appliance act casts upon him a greater duty than was imposed at common law. As to the machine itself, he may not be bound to select or adopt the latest and best appliance, no matter what its cost, or his ability to pay for it; nor is he bound to use any particular kind of machinery in his work. He is required to use such care in the selection of his appliances as a reasonably prudent man would exercise, and is not bound to select the best, unless those which he supplies have some radical fault or are so generally obsolete and supplanted by others that the adoption or retention of the inferior appliance in itself indicates negligence. This rule of law is applicable to the claim that the knives used on the planer were not set, as they should have been, into the head of the shaft. It perhaps would have been better to have submitted this issue to the jury, especially in view of the offer of plaintiff to amend his petition to cover the exact point. By reason of the court's ruling, plaintiff was not permitted to develop this point, and we speak, therefore, with no assurance upon the question as to whether the faulty construction of the machine itself should have been submitted to the jury.

As to guards, however, a somewhat different rule obtains in virtue of the statute quoted. The machine, no matter what its kind, must be properly guarded, and the employer must know what are proper and efficient guards, and, having ascertained, he must install them, and keep them in repair.

When a machine of the kind described in the statute is

4. SAME: un-
guarded ma-
chinery: bur-
den of proof:
instruction.

found unguarded, and an injury happens, it is, as a rule, incumbent on the employer to show that there was no guard, which was practical, that would have prevented the injury. *Kimmerle v.*

.Dubuque Co., 154 Iowa, 42, and cases cited; McCarney v.
Bettendorf Axle Co., 156 Iowa, 418.

In the present case plaintiff assumed the burden of show-
ing that there was a guard which could have been so attached,
but the court practically took this showing away from the
jury and instructed as follows: "Evidence has been intro-
duced upon the trial in reference to different kinds of guards
which are said to be used upon similar machines. This evidence
should be considered by you, if at all, only in so far as same
may aid you, if at all, in determining whether or not the
guard which was in fact upon the machine in question was
reasonably suitable to properly guard same. Defendant was
not bound to furnish the best and latest improved guards
nor appliances. If he furnished such a guard and appliance
as was reasonably safe and proper for the purpose, in view
of all of the conditions and circumstances disclosed by the
evidence, then he performed his full duty in that regard."

This instruction, and the rulings on the testimony, were,
we think, erroneous and prejudicial to the plaintiff. Kimmerle
v. Altar Mfg. Co., 154 Iowa, 42; Miller v. Sash & Door Co.,
153 Iowa, 735; McCarney v. Axle Co., 156 Iowa, 418; Murray
v. Railroad Co., 152 Iowa, 732; O'Connell v. Smith, 141 Iowa,
1; Kirchoff v. Creamery Co., 148 Iowa, 508; Verlin v. Gypsum
Co., 154 Iowa, 723; Sutton v. Bakery Co., 135 Iowa, 390,
relied upon by appellee, has been very much modified, if not
overruled, in subsequent decisions.

II. There is much doubt in our minds regarding the
so-called guard which was on the machine; whether it was
5. SAME: instruc-  any guard at all to the operator. At any
tions.              rate, the trial court gave the following, which
was its only instruction with reference thereto:

The law of this state provides that in manufacturing
establishments, where machinery is used, all saws, planers,
cogs, gearing, belting, shafting, set screws, and machinery
of every description shall be properly guarded. This law is
intended as a protection, not only against the carelessness or
ignorance of those who may incidentally come in contact

with dangerous machinery while moving about in its vicinity, but it is also intended as a protection to the operators themselves, who, by reason of inadvertence or some misfortune, might otherwise be injured by it. The statute does not prescribe any particular kind of guard, and it is for you to say, from the evidence which has been introduced upon the trial, whether or not the guard which was upon the machine in question at the time plaintiff was injured was reasonably proper and suitable as a guard. A planer or other instrumentality is properly guarded when the device attached is of material and construction such as will reasonably shield those operating it or moving near it from contact therewith when in motion, at least when practicable, without unreasonably interfering with the efficiency of the machine.

This instruction was, as we think, inadequate, if not erroneous, when read in connection with No. 9, immediately following which we have already quoted. There is nothing in the instruction which properly indicates what sort of contrivance would in law be considered a proper guard, and the least that may be said is that the trial court would have defined the requirement of the statute so that the jury could have been able to say whether the machine was properly guarded. *Miller v. Door Co.* and *Kirchoff v. Supply Co., supra.*

It will be noticed that the guard did not act automatically, and that it was necessary for the operator to close it over the knives of the planer before it would be any protection. When so closed, it is apparent that the operator could not have brushed the shavings, ice, and debris from the table, certainly he could not have removed them from around the planer, without removing the guard.

III. In the same connection it should be observed that the record shows that Lusk was the experienced man connected with the machine; that he was in charge thereof; that he operated it and removed the shavings and

6. SAME: negligence of vice principal.

debris, in the presence of the plaintiff, without using the guard; and there was testimony that he (Lusk) never used it because he deemed it a nuisance.

It was not, therefore, in so far as plaintiff was concerned, any guard at all, for it did not work automatically, and was not worked at all while he was about the machine. As to the use of the guard, Lusk was the *alter ego* of defendant, and defendant cannot be heard to say that his negligence was that of a co-employee. This because of the statutory duty cast upon him.

IV. Plaintiff asked the court to instruct that the doctrine of assumption of risk did not apply, but this was refused. We think it should have been given substantially in the terms of the statute before quoted. *Davidson v.*

7. SAME: assump-  *Iron Works,* 107 Minn. 17 (119 N. W. 484,
tion of risk:
instruction.     28 L. R. A. (N. S.) 332, 131 Am. St. Rep.
433); *Lamb v. Mfg. Co.,* 155 Iowa, 400; *Poli v. Coal Co.,* 149 Iowa, 104; *Kimmerle v. Mfg. Co.,* 154 Iowa, 42; *Verlin v. Gypsum Co.,* 154 Iowa, 723; *Murray v. Railroad,* 152 Iowa, 732; *Stephenson v. Brick Co.,* 151 Iowa, 371.

V. Aside from all this, even assuming that the machine as constructed was sufficiently guarded, the defendant may have been liable for failure to warn plaintiff of the dangers

8. SAME: negli-  incident to its use. Defendant knew that
gence: warning.  plaintiff was unfamiliar with that kind of
work, and his original employment was not for that purpose. When he was given the more hazardous work, it was the duty of his employer to warn him of the risks and dangers incident to his new employment. This was not done, and the trial court neglected to charge on this theory of the case, although it was squarely in issue. This alone demands a reversal of the case.

VI. It is not true, as defendant contends, that plaintiff was a volunteer or interloper. He was set to work about the machine with mere general directions as to what to do. His

9. SAME: relation  companion found it necessary at times to re-
of master and    move the shavings, dirt, etc., from the table
servant: scope
of employment.  of the machine, and he did it without using
the so-called guard. At the time of the accident, plaintiff

was nearest the shavings and dirt, and he attempted to remove it, using the stick, as already stated. He had not been told not to do it, and in what he did was acting within the scope of his employment.

VII. There is no room for saying that plaintiff was guilty of contributory negligence as a matter of law. He knew nothing of the machine or his danger and was justified in believing it was safe, and his conduct should also be viewed with reference to what his more experienced associate did under the same conditions and circumstances. In following this example, he should not be held negligent as a matter of law; whether, in view of all of the circumstances of the case, he was negligent was a question for the jury.

10. Same: contributory negligence.

VIII. Of course, in so far as the case might depend upon defendant's common-law liability, the doctrine of assumption of risk and contributory negligence is in the case; but, upon the question of statutory liability, assumption of risk is no defense, save as it amounts to contributory negligence, and it takes a much stronger showing to make out contributory negligence in the latter case than in the former.

11. Same: contributory negligence: statute.

IX. We have not undertaken to cover each and all of the forty-five points relied upon for reversal. To have done so would have unduly extended this opinion. What we have said sufficiently covers the main propositions involved, and will be an adequate guide for the court upon a retrial. Defendant's motion to strike and dismiss the appeal is overruled.

For the errors pointed out, the judgment must be, and it is—*Reversed.*

Ladd, C. J., and Gaynor and Withrow, JJ., concur.