LOUISE A. WINN, Administratrix, Appellee, v. TOWN OF ANTHON, Appellant.

**MASTER AND SERVANT:** The Relation—Creation and Existence
1 —Consent of Master. Principle reaffirmed that one who in good faith enters upon the master's work at the request of a servant in actual charge of the work, and with the express or implied consent of the master, is entitled to the protection due

a servant, even though he may not be entitled to recover wages from the master.

**MASTER AND SERVANT:** Contributory Negligence—Officious Substitution of Machinery—Evidence.   Evidence reviewed, and held insufficient to show that a deceased servant had officiously removed safety set screws from a shaft and substituted head set screws, which were dangerous.

*Appeal from Woodbury District Court.*—JOHN W. ANDERSON, Judge.

MONDAY, MARCH 12, 1917.

ACTION to recover damages for personal injury. Verdict and judgment for the plaintiff. Defendant appeals.— *Affirmed.*

*Shull, Gill, Sammis & Stilwell* and *H. B. Walling,* for appellant.

*Henderson & Fribourg* and *O. D. Nickle,* for appellee.

GAYNOR, C. J.—This action is brought by the administratrix of the estate of one Lester R. Winn to recover damages, based on alleged negligence of the defendant town, resulting in his death.   It is claimed that the deceased was an employee of the defendant town's, and engaged in operating an engine in its water plant.   The answer was a general denial, contributory negligence and assumption of risk. There was a verdict for the plaintiff, and judgment was entered against the defendant, and from this, defendant appeals.

Defendant is an incorporated town with a population of about 700 people.   It owned and operated a waterworks system for the purpose of supplying water to the inhabitants of the town.   The power used was produced by the use of a gasoline engine.   One Sheffield was duly appointed marshal by the city, and among his duties as such was to operate the water plant and the pump used in connection

therewith. Winn, the deceased, was employed by Sheffield. Sheffield's employment began about the 1st of July, 1912. The next day after he was employed by the city, he employed the deceased, Winn, to run this water plant and operate the pump. Deceased continued in this employment from the 1st of July, 1912, until his death, which occurred on January 27, 1913.

In stating her cause of action against the town, the plaintiff specifies two grounds of negligence, but one of which we will consider, to wit: That certain set screws were used upon the shafting which connects the engine and pump, and that these were so placed as to protrude 1½ inches above the surface of t: shafting; that this shafting was left wholly unguarded, with these screw heads so projecting, rendering the shafting dangerous and unsafe when in operation.

One question material to this controversy is, Was the decedent an employee of the defendant's or a mere volunteer or trespasser? The record discloses that Sheffield was employed by the town as its marshal; that as such he assumed and was charged with certain duties, among which was to operate the waterworks and pump in question. The evidence is conclusive that, the next morning after he was so employed, he obtained the services of Winn and installed him in charge of this plant, with the duty of operating the pump and waterworks; or, in other words, discharging those duties, so far as the operation of the water plant is concerned, which Sheffield assumed under his employment with the defendant.

1. MASTER AND SERVANT: the relation: creation and existence: consent of master.

The contention of the defendant is that Sheffield had no authority to employ the plaintiff; that no member of the council knew of Winn's employment; that Sheffield employed Winn on his own account and paid him out of his own pocket to do the work; that it had no knowledge that

the conditions existed of which complaint is made; that it was in no way responsible for those conditions; that, at the time Sheffield was employed by the town, and at the time Winn took charge of the water plant, there were no set screws in the shafting with heads projecting; that the condition complained of did not then exist; that, if any change was made in the shafting, touching head screws, that rendered the shafting dangerous, these changes occurred while Winn had charge; that either he changed the head screws himself, and brought about the condition that caused his injury, or that he permitted or suffered someone to do it while having charge of the shafting, and that the change, if any made, was not known to the town or communicated to the town by him or anyone else; that he brought about, or suffered to be brought about, the condition which rendered the shafting perilous—the condition which it is claimed caused the injuries resulting in his death.

We take up the first proposition: Was Winn rightfully in charge of the work with the knowledge and consent of the town, actual or implied? That he was performing services for the town and its inhabitants, this record leaves no doubt. He entered upon this work about the 1st of July, 1912, and continued openly about the work and in discharge of these duties until he was injured, on January 27, 1913, and was there daily. It is true Sheffield employed Winn on his own account and paid him out of his own pocket. Winn's general business consisted of work in an elevator situated near this plant. This plant was located between Winn's home and the elevator in which he worked. He was employed by Sheffield to start and stop the engine and pump at appropriate intervals.

It is urged that, because the town owned this water plant, and had undertaken, through its proper officers, to furnish water to the town through this instrumentality, it had a right to and did employ a suitable and proper per-

son to discharge these duties, and, in doing this, selected Sheffield; that Sheffield's act in employing the plaintiff and paying him out of his own pocket did not charge the town with any duty to the party so employed; that it could not be held, without notice to it, either expressed or implied, that Winn was attempting to discharge any duties for and in behalf of the defendant, in connection with this plant.

Upon this point we cannot do better than repeat in substance what was said in this same case in the opinion filed in February, 1915, and reported in 168 Iowa 699, 703: That some degree of supervision of the plant and its machinery devolved upon him (Sheffield), although it appeared that the ultimate and general supervision was reserved to the town council. He '(Sheffield) employed Winn the next day after his own appointment. The defendant is a town of 600 or 700 people. The plant is located close to the business part of town. There was no concealment or bad faith on the part of Winn. Sheffield furnished him with a key. His services were performed openly and to the knowledge of citizens of the town. In November, the clutch became out of repair. This was reported by Winn to Sheffield, who reported it to the town council. Sheffield and Winn removed the clutch, and a member of the town council came and examined it. Afterwards, it was sent off for repairs. When it was returned, Winn assisted again in replacing it. It is claimed, however, that Winn was not actually present when the councilman took the clutch for repairs.

It is said in that opinion that there was direct evidence of actual knowledge of Councilman Lucas of Winn's work, and perhaps the same ought to be said as to Councilman Meyers. The record on this trial does not affirmatively show that fact, but it is our judgment, under the record as made, that the jury could well have found actual knowledge of the councilmen of the fact of Winn's employment, and the fact that he was rendering services for the town in and

about the plant in question, prior to the time he was injured.

Notwithstanding some evidence to the contrary, we think the jury was justified in finding, in view of all the facts disclosed by this record, that it would be a most incredible and unbelievable thing that the officers of this town should not have known of Winn's employment. This is emphasized when we consider that they had supervision of so important a matter as furnishing water to the inhabitants of the town; that they had primary supervision and direction of the instrumentality through which the water was furnished; that the town is small, and that the plant is located near the business portion of the town; that these men who acted as councilmen were active business men of the town, with their places of business located not far from the plant in question. We think, therefore, that there was evidence justifying the conclusion at which the jury must have arrived in their verdict, that the town had notice and knowledge of the fact that Winn was serving them in the capacity in which he was serving them at the time he received his injury. It was for the jury to say whether the employment of decedent, and the rendition of services by him pursuant thereto, was by consent of the town council, either expressed or implied. With this finding, the case is brought squarely within the decision of *Aga v. Harbach,* 127 Iowa 144. It was so held on the former appeal.

2. MASTER AND SERVANT: contributory negligence: officious substitution of machinery: evidence.

This carries us to an examination of the record as to who is responsible for the set screws with heads projecting, of which plaintiff complains. It appears that, at the time Winn entered upon his work, only countersunk set screws were in use upon such shafting, and it appears, with fair certainty, that these screws remained in the shafting up to the time the clutch was removed and replaced in November, 1912. In Novem-

ber, 1912, one of the councilmen was notified by Sheffield, the marshal, that the clutch was "out of fix," and he was requested by Sheffield to go down and see what could be done about it. He went down and examined the clutch. The clutch was taken off and sent to Sioux City to be repaired. The clutch was, in fact, out of commission. This councilman testifies:

"At this time the set screws were countersunk. There were no head set screws projecting from the shafting or sleeve. The clutch shaft and sleeve were removed and were sent to Sioux City for repair."

They were returned in about 10 days and were put back into the plant. Winn and Sheffield adjusted these parts in their proper places at the plant. They placed whatever screws were placed in there at that time to hold the sleeve. Sheffield testified, "I helped put the screws that were put in at that time," but he contends that the screws put in at that time were all countersunk, and not such screws as were in there at the time of the injury. He says:

"They were safety set screws that were put in at the time the clutch and shaft were replaced. That was about the last of November or the 1st of December."

He says that he frequently saw them afterwards and noticed that set screws were sunken and in good shape, holding the sleeve in its proper place; that he noticed this up to within a short time before the injury occurred—15 or 20 days or so; that he was there frequently, made special observation of the work of this shaft after it had been replaced, and that he saw that sunken set screws remained there as placed; noticed this not only when the engine was in motion, but when the engine was idle; that, after Winn was injured, he examined the shaft and sleeve, and found these projecting head screws in the shaft.

There is some testimony offered by the plaintiff that, sometime in January, Winn purchased certain screws, such

as were in the shaft at the time he was injured—those with projecting heads, known as head set screws. The suggestion is that he made the change after the 1st of January, removing these countersunk screws, and substituting these head screws. Let us see what the record shows on this point, and what the jury might have found. It may well be said that the record satisfactorily shows that, up to November, only countersunk screws were used in the shaft and sleeve at the place where Winn was injured. This shaft and sleeve were removed in November. These screws were at that time removed. The shaft and clutch were sent to Sioux City—at least the clutch. When the repairs were returned, they were carried by Winn and Sheffield to the engine house. They were replaced. This was about the last of November or the 1st of December. Set screws with projecting heads were observed in the shaft soon after this, and during the month of December. There is evidence that projecting head screws were in the shaft at this point after the change had been made, during the month of December. The jury might have found this to be a fact. That no projecting head screws were in there until after the shaft had been removed and replaced, we may concede. Sheffield superintended the replacing of the shaft. He clearly represented the town at that time. The jury might well have found that he was mistaken in saying that no projecting head screws were used in replacing this shaft at the point where they were at the time of the injury. The jury could well have found from the testimony of the deceased's son that projecting head screws were found after the shaft was replaced and during the month of December, and prior to the time when it is said that Winn purchased head screws.

It might occur to the jury as incredible that Winn, who was not charged with the duty of repairing the machinery, whose duty was only to notify Sheffield, as Sheffield says,

should have removed these sunken set screws from the shaft at his own expense so soon after they were placed there by Sheffield, or under Sheffield's supervision, and substitute these other dangerous screws. The unthinkableness of this is emphasized by the fact that Sheffield testifies that, all during the month of December, after the change had been made in the shaft and up to within 15 days of the time when Winn met his death, he had given particular attention to this shaft and the screws, and found it performing its functions properly during all that time, without complaint from Winn, and without anything in the condition there observed by him requiring the change. It is true, we may say, that the sunken set screws were used and were in the shaft up to about the last of November, 1912; that they were then removed, the shaft removed, and afterwards replaced with screws to hold it in position; that, on the 27th day of January, projecting head screws were in the shaft; that Winn was caught upon these head screws and received the injuries that caused his death. There is no direct evidence who made the change, nor is there any evidence of any necessity for change, nor is there anything in the evidence to suggest a needed change in the set screws, after the shaft had been replaced on the last of November.

To charge Winn with having removed the sunken set screws after the shaft had been replaced, and substituting therefor these dangerous projecting head screws, is to find that he not only did a useless thing—a thing wholly unnecessary and uncalled for by the conditions then existing—but that he did wilfully and purposely substitute a dangerous and unsafe condition in the instrumentality about which he was required to work. We think the jury was justified in finding that these projecting head screws were placed in the shaft at the time the shaft was replaced, during the last of November; that they were placed there under the supervision and direction of Sheffield, who was acting

under the direction of the town council—acting for and in behalf of the defendant; and that Sheffield, to say the least, is mistaken when he testifies to the contrary.

This brings the case under the rule of the statute, and under the rule laid down in *Correll v. Williams & Hunting,* 173 Iowa 571; *Poli v. Numa Block Coal Co.* 149 Iowa 104; *Stephenson v. Sheffield Brick & Tile Co.,* 151 Iowa 371; *Verlin v. United States Gypsum Co.,* 154 Iowa 723; *Lamb v. Wagner Mfg. Co.,* 155 Iowa 400; and like cases.

The only question in this case is the sufficiency of the evidence to justify the verdict. A careful reading of the whole record satisfies us that the verdict has support in the evidence, and the case is, therefore,—*Affirmed.*

LADD, EVANS, and SALINGER, JJ., concur.