Morgan Edward Brantner v. The Chicago, Burlington
& Quincy Railway Company, Appellant.

**Railroads:** INJURY TO SWITCHMAN: CONTRIBUTORY NEGLIGENCE: EVI-
1  DENCE. The evidence, in an action for injury to a switchman
while riding the foot-board of his engine which collided with
another, is reviewed and it is held that plaintiff was not guilty,
as a matter of law, of such contributory negligence as to pre-
clude his recovery.

**Same:** EXPERIMENTAL EVIDENCE. The value of experimental evi-
2  dence is dependent in a very large degree upon an exact re-
production of the facts and circumstances; and where the con-
clusiveness of the experiments is in doubt and in direct conflict
with other evidence on the subject the issue is for the jury.

**Submission of issues.** Where there is a substantial conflict in the
3  evidence the issue should go to the jury, and even though their
finding is against the preponderance of the evidence it will not
be disturbed.

**Contributory negligence.** Although it is the duty of a switchman
4  while riding the foot-board of his engine to keep a lookout
ahead for possible dangers, still he will not be held negligent
in temporarily turning and looking backward for a proper pur-
pose.

**Withdrawal of evidence:** PREJUDICE. Where the court charged as
5  a matter of law that the railway company was not negligent
in running its engine at an improper speed at the time of an
accident, a withdrawal of the evidence as to speed was not
prejudicial to defendant.

**Personal injury:** CARE: INSTRUCTION. An instruction that the jury
6  should determine what precaution ordinary care required the
plaintiff in a personal injury action to exercise under all the
circumstances, considering his age, experience, information,
danger and surroundings, is correct.

*Appeal from Mills District Court.*— Hon. O. D. Wheeler,
Judge.

Wednesday, July 3, 1907.

Rehearing Denied Tuesday, November 19, 1907.

ACTION to recover damages for personal injuries received by plaintiff while in the employ of the defendant company as switchman, resulting from being crushed between the switch engine on which he was riding and a road engine approaching it on the same track. . The negligence of defendant alleged in plaintiff's petition consisted in advising plaintiff that the track along which the switch engine was directed to proceed was clear, that the road engine with which the switch engine collided was not provided with a red light as a signal of danger, and that no signal of its approach was given by the ringing of its bell or otherwise. These allegations of negligence were denied by defendant, and it also relied upon assumption of risk and contributory negligence on the part of the plaintiff. There was a verdict for plaintiff in the sum of $16,000, which the court required to be reduced to $8,000 as a condition of overruling a motion for a new trial on the ground that the verdict was excessive. Plaintiff consented to this reduction, and a judgment was rendered in his favor, from which defendant appeals.— *Affirmed.*

*J. W. Deweese, W. S. Lewis,* and *W. E. Mitchell,* for appellant.

*Mathew Gering* and *Gillilland & Logan,* for appellee.

McCLAIN, J.— As the principal contention for appellant is that a verdict should have been directed in its favor under the evidence, it will be necessary to state somewhat fully the facts which the testimony tended to establish.

Plaintiff as switchman was prior to the accident one of the crew of a switch engine being operated in defendant's yards at Pacific Junction, acting under the general direction of one Monroe, the foreman, who was in the general control of the operation of the engine. The work in the yard involving the movement of the trains there, as well as of the switch en-

1. RAILROADS: injury to switchman: contributory negligence: evidence.

gine, was under the control of the night yardmaster, named
Shreeves. Between five and six o'clock on the morning of
February 14, 1904, Shreeves directed the crew of the switch
engine, which was in the eastern part of the defendant's
yards, to go to the western part of the yards for the purpose
of getting a car out of a train to switch it to another place.
But, on attempting to proceed westward, it was discovered
that the track and switches along the main line were so ob-
structed that the switch engine could not proceed, whereupon
Shreeves directed that the switch engine run eastward until
it could be switched upon a Y connecting the east and west
track with a north and south track, crossing it at right angles
— this Y being designated as the northeast Y — and from
which it could, by being switched onto the northwest Y,
reach its destination. At the time this direction was given
Shreeves stated to, or in the presence of, the crew of the
switch engine that the northeast Y was clear. The switch
engine was then run eastward past the switch of the Y, which
Monroe, who was not at the time riding on the switch engine,
threw so that the switch engine could run along the northeast
Y. At that time plaintiff, who was the " follower " or " pin-
puller " for the switch engine, was riding on the footboard at
the west end of the tender of the switch engine, which was
backed westward along the Y track past the switch. Plain-
tiff's duty while thus on the engine, in the absence of Monroe,
the foreman, was to direct the movements of the engine by
signals given to the engineer, looking out at his window.
When the engine had passed the switch, plaintiff looked back
to see whether Monroe got upon the running board at the
front or east end of the engine, for the work assigned to the
switch engine could not be performed unless Monroe was with
it, as he only had information as to the particular car which
was to be switched when the engine should reach its destina-
tion. Plaintiff then signaled with his lantern in his left
hand to the engineer on the south side of the engine to proceed
more rapidly along the Y track, and, after proceeding two

hundred or three hundred feet along this Y track in a north-westward direction, there was a collision between the rear of the switch engine's tender where plaintiff stood, and the rear of a road engine which was backing down upon the same track, and as a result of this collision plaintiff was crushed and severely injured.

Counsel for appellant practically admit that there was enough evidence to take the case to the jury with reference to the alleged negligence of the defendant, on the grounds above set out, but they contend that plaintiff was guilty of contributory negligence under the undisputed evidence, which, as they insist, showed that plaintiff, in general disregard of his duty to look out for his own safety and the safety of the switch engine, and in direct disregard of a rule of the company introduced in evidence, failed to look in the direction in which the switch engine was backing, so as to observe any obstruction or danger, and that the road engine, which was backing down the Y track in the opposite direction, was provided with a red light on its tender, which plaintiff, had he been looking, could have seen in time to have stopped the switch engine, or jumped from the footboard to a station platform which at this place ran alongside the Y track. They also contend that although at the time of the accident, which occurred at about a quarter before six o'clock, it was still comparatively dark, plaintiff, had he been on the lookout, could have seen the approaching engine by means of the light thrown from a headlight on the end of the tender where he was riding.

With reference to the ability of the plaintiff to see the approaching road engine by means of the rays from the headlight on the tender of the switch engine in time to have avoided the collision, had he been looking forward, the evidence is, as we think, so far in conflict as not to be conclusive. The Y track had a curve of five degrees, and plaintiff and other witnesses testified that the headlight in question would not disclose an

2. SAME: experimental evidence.

object on the track more than two car lengths, or seventy feet, in front, while witnesses for the defendant testified as to experiments with a similar headlight at the same place that an object on the track could have been discovered at a distance of over three hundred feet. It is to be observed, however, that the witnesses who made the experiments did not use the same headlight, and, as the distance at which an object on a curved track would be disclosed by the headlight was dependent to some extent on the degree of divergence of the rays from a straight line, the value of the experiments would depend very much on the exact correspondence of the two headlights in this respect. This exact correspondence is not made out by the testimony, and the conclusiveness of the experiments is therefore thrown into some doubt. We are satisfied that the direct evidence of plaintiff and another employé who was familiar with the switch engine on which plaintiff was riding when the accident occurred, that the rays from its headlight would not strike an object on the track at this place owing to the curve at a greater distance than about seventy feet, was sufficient to at least raise a real conflict in the evidence as contradicting the testimony of the witnesses who made the experiments.

With reference to the presence of a red light on the rear of the tender on the road engine as it backed down the Y, we are satisfied also that there is a direct and substantial conflict in the evidence. Witnesses for defendant

3. SUBMISSION OF ISSUES.

testified that they attached or saw attached to the ladder of the road engine tender a red lantern; but plaintiff and others, who would have been likely to see such lantern had it thus been attached to the ladder and burning, testified that they did not see it, although in a situation to do so. While we think that the preponderance of the evidence is with the defendant as to this fact, and that the jury might have been justified in finding that there was a red light which plaintiff could have seen had he been looking forward along the track upon which his engine was pro-

ceeding, yet the jury expressly found in answer to a special interrogatory that there was no red light burning on the rear end of the road engine tender, prior to or at the time of the accident, and, under the evidence as it is presented in the record, we do not feel justified in holding that this finding was unsupported by the evidence.

Conceding that it was the duty of plaintiff, not only under the rules of the company, but also in the exercise of due care for his safety, to maintain a lookout along the track for any obstruction which would cause danger, we are not satisfied that the evidence conclusively shows negligence on his part in this respect. He was certainly justified in looking back as the engine passed the switch to see whether Monroe, the foreman, mounted to the footboard at the head of the engine before proceeding further. In the absence of any reason to believe that there was immediate danger in proceeding along the Y track in view of the assurance given that it was clear, a temporary turning and looking backward for proper purposes was not conclusively negligence. For the defendant, there was the testimony of Monroe that, as the engine passed him, he saw plaintiff faced backward toward the tender, and cautioned him that it was his duty to look forward; but plaintiff testified that, as soon as he saw that Monroe had mounted the footboard at the head of the engine, he did look forward, and signal to the engineer with his lantern in the left hand to proceed, and the engineer testifies to seeing such signal given by plaintiff with the lantern held in his left hand. Unless plaintiff was facing forward at the time this signal was given, he could not have swung his lantern out beyond the tender so as to be seen by the engineer, with his left hand, and the testimony of the engineer, who was a witness for the defendant, therefore corroborates that of the plaintiff that he was facing forward after he had looked back for Monroe, and when he signaled the engineer to proceed. As to whether plaintiff continued to face forward and look along the track in the direc-

tion in which the engine was going from this time until he saw the road engine practically upon him, there is no evidence whatever, save that furnished by plaintiff's testimony in the affirmative. That plaintiff was struck by the road engine and injured in the left hip does not tend to disprove plaintiff's testimony, for it appears that in the attempt to jump from the footboard when he saw his danger he swung himself by his left hand, so that his right foot was on the station platform when he was caught, his escape being prevented by his left hand catching under the grip iron, at the end of the tender to which he had been holding with his left hand, his lantern in his right.

The theory of counsel for defendant that plaintiff, to avoid facing a cold wind blowing from the northwest, had turned partially around, and buried his face in the collar of his overcoat, so that he could not see forward, is not established by any evidence in the record. Such testimony as there is with reference to the height of his coat collar indicates that in no position could his face have been so covered by it that he could not see; and, as already indicated, there is nothing to show that as his engine proceeded northwestward he was not looking to the front as he testifies.

On the whole record, we are satisfied that contributory negligence of defendant is not established by such conclusive evidence that we would be justified in disregarding the verdict of the jury. The rules of law applicable

4. CONTRIBUTORY NEGLIGENCE. to the issue as to contributory negligence of plaintiff are so well established that reference to authorities is hardly necessary. That plaintiff was not conclusively negligent in failing to maintain a lookout to the front while his attention was properly diverted in ascertaining whether Monroe had obtained a footing on the forward footboard is supported by what is said in *Taylor v. Wabash R. Co.*, 112 Iowa, 157, where it was held that, although the plaintiff knew of conditions occasioning danger, and was bound to use reasonable care in avoiding the consequences of

such danger, yet " in determining the question whether he did exercise such care all the facts must be considered, and it might well be said that the circumstances were such as to throw him off his guard and excuse him for acting as he did."

That the previous statement by Shreeves, the yardmaster, to the crew of the switch engine with reference to the northeast Y being clear, might be taken into consideration by the jury in determining whether plaintiff was negligent under the circumstances in momentarily omitting to look forward while he ascertained whether Monroe had mounted the footboard, is supported by the discussion of the evidence in *Christopherson v. Chicago, M. & St. P. R. Co.*, 135 Iowa, 409. That the experiments with another headlight in ascertaining how far plaintiff could have seen along the track by the headlight on the tender of his engine were not conclusive is supported by what is said in *Bach v. Iowa Central R. Co.*, 112 Iowa, 241. That plaintiff, acting in an emergency after he saw the danger of an imminent collision, was not necessarily guilty of contributory negligence in attempting to jump from the footboard to the platform, instead of applying the emergency air brake by means within his reach is supported by *Fox v. Chicago, St. P. & K. C. R. Co.*, 86 Iowa, 368; *Haas v. Chicago, M. & St. L. R. Co.*, 90 Iowa, 259; *Schultz v. Chicago & N. W. R. Co.*, 44 Wis. 638. But there is really no controversy between counsel as to the law of the case, and further citation of authorities is not called for.

Assignments of error in the giving and refusal of instructions are but briefly argued by counsel for appellant. Complaint is made that the court withdrew from the consideration of the jury all evidence as to the speed at which the switch engine was running at the time of the accident, but the trial court properly held that defendant was not chargeable with negligence in this respect, and we cannot see how defendant was prejudiced thereby. In other instructions the jury were allowed to take into account the speed of the switch engine in deter-

5. WITHDRAWAL OF EVIDENCE: prejudice.

mining whether under the circumstances the plaintiff was negligent, and for that purpose this was a proper subject of consideration.    It is not contended for appellant that plaintiff was under the circumstances guilty of negligence in causing the switch engine to run at too high a rate of speed.

It is also urged that there was error in telling the jury that plaintiff's duty was to use ordinary care in keeping a lookout for any possible obstructions on the track.    But the

6. PERSONAL
INJURY: care:
instruction.

instruction in this respect was that the jury should determine "what precaution ordinary care would require him [plaintiff] to exercise under the circumstances, and in the light of his experience, information, danger, and surroundings." No citation of authority is necessary to establish the correctness of this proposition.

Misconduct of counsel for plaintiff was urged as a ground for a new trial, but the language complained of related to the credibility of the witnesses, and we are satisfied that there was no such misconduct as to require the court to set aside the verdict.

Finding no error in the record, the judgment of the trial court is *affirmed.* . .