PETER G. JOHNSON, Appellee, v. PLYMOUTH GYPSUM PLASTER
Co., Appellant.

**MASTER AND SERVANT:** Negligence—Jury Question—Sufficiency
of Evidence. Evidence reviewed, and *held* to present a jury
question on the question of defendant's negligence (a) in fail-
ing to furnish a safe place of work, (b) in the use of an unsafe
rope, (c) in the construction of a door to a mine, and (d) in
failing to station someone at said door to open same.

**MASTER AND SERVANT:** Negligence—Evidence—Custom to
Show Negligence or Non-Negligence Contrasted. Evidence of
custom is admissible to *establish* negligence, but not to *excuse* negli-
gence. So *held* in the case of alleged negligence of a mine owner
in so constructing a door to the mine that it would swing only
one way.

**MASTER AND SERVANT:** Proximate Cause—Intervening Cause—
Contributory Negligence—Confusing Instructions. Instructions
which confuse the doctrine of "intervening cause" with the doc-
trine of "contributory negligence" are properly refused.

**NEGLIGENCE:** Contributory Negligence—Emergency—Duty to Pre-
serve Property—Position of Peril. It is always proper, in con-
sidering the question of a plaintiff's contributory negligence, to
take into consideration (a) whether plaintiff, in what he did,
acted in an emergency or deliberately, (b) whether he was under
a duty to preserve the property of defendant, and (c) whether
he was, at the time of acting, in peril. Principle applied where
plaintiff, in approaching a door to a mine and suddenly failing to
open the door with a rope because it broke, might have attempted
(1) to open the door with his hands, or (2) to stop the cars, or
(3) to stand to one side of the cars and allow them to crash into
the door, or (4) to get upon the cars. Plaintiff chose the first,
and was injured. *Held*, he was not negligent *per se*.

**MASTER AND SERVANT:** Assumption of Risk—Dangerous Condi-
tion—Knowledge. No knowledge of danger, no assumption of
risk. So *held* where plaintiff, a miner, attempted to open the
door to the mine by means of a defective rope supplied for that
purpose, without knowledge of such defective condition and of
the danger attending its use, and the rope broke and plaintiff was
injured by oncoming cars.

**MASTER AND SERVANT:** Negligence—Pleadings—Lack of Speci-
fication—Submission of Issues—Estoppel. A defendant in an

action for damages for negligence may not allow the pleadings as to negligence to remain in part in a blanket or "catchall" form, and then after trial complain that the court submitted the charges of negligence in the form in which they appeared in the petition. Defendant should employ the motion for a more specific statement.

PRINCIPLE APPLIED: Plaintiff pleaded that defendant was negligent as follows:

1. In not furnishing a safe place to work, in a mine;
2. In not furnishing a strong rope with which to operate a door, in a mine;
3. In failing to examine said rope;
4. In so constructing the door that it would open but one way; and
5. In not having an employee at said door to open it.

Defendant did not move for a more specific statement as to No. 1. The court submitted all these several grounds of negligence in the form pleaded, thereby treating the first specification of negligence as involving the entire construction of the entry to the mine. *Held*, defendant, by not asking to have the grounds of negligence stated with precision, had lost his right to object to the action of the court—could not object that specification No. 1 was a "catchall" that gave the jury unlimited authority to do as it pleased.

**NEGLIGENCE:** Contributory Negligence—Definition—Construction. An instruction defining contributory negligence as "the doing of some act by the party complaining that to some extent aided *in bringing about the conditions* that produced the injury," etc., is not objectionable as excluding from consideration what the complaining party himself did at the time.

**TRIAL:** Instructions—Modifications—Negligence. It is proper for the court, in giving a requested instruction in an action for damages for negligence, to so modify the requested instruction that it presents *both* theories of the case. So *held* where the requested instruction stated the effect of plaintiff's leaving a perfectly safe place and voluntarily assuming a hazard which he knew or ought to have known would result in harm, and the court added a modification, stating that such rule did not apply if plaintiff was not in a safe place or if, acting as a reasonably prudent person, he believed he was not in a safe place.

**NEGLIGENCE:** Contributory Negligence—Emergency—Choice of Ways—Choosing the More Hazardous. Choosing the more hazardous of two ways by one faced with sudden and imminent peril does not *per se* constitute contributory negligence.

TRIAL: Verdict—Excessiveness—$5,000. Verdict of $5,000 in personal injury action sustained. Plaintiff was 40 years of age when injured, and was then earning $75 a month as a miner. He suffered a compound fracture of the leg, with consequent pain, shortening of leg, readjustment of his spine, and stiffness of knee. He still walks with a cane, cannot bear any weight on his leg, and is unable to do much work.

*Appeal from Webster District Court.—E. M. McCALL, Judge.*

WEDNESDAY, MARCH 8, 1916.

ACTION at law to recover damages for injuries received by plaintiff while working in defendant's mine. Upon issues joined, the case was tried to a jury, resulting in a verdict and judgment for plaintiff in the sum of $5,000, and defendant appeals.—*Affirmed.*

*Kenyon, Kelleher & Price,* for appellant.

*Gabrielson & Hemingway* and *Robert Healy,* for appellee.

DEEMER, J.—I. Plaintiff was employed as a driver in defendant's mine, and, on September 19, 1913, while engaged in the performance of his duties, he received the injuries of which he complains. It is charged that defendant: (1) Failed to furnish a safe place to work; failed to furnish a reasonably strong rope which was attached to the door in the shaft of the mine with which to open the door, and that the rope furnished was rotten, defective and unsafe; (2) failed to notify the plaintiff of the dangers incident to the use of the defective rope; (3) was negligent in not examining the rope; and (4) was careless in so constructing the door in the shaft that it would open but one way, and that toward the cars which were being driven to the mouth of the shaft; and (5) was negligent in not having someone stationed at a point to open the door for approaching cars.

1. MASTER AND SERVANT: negligence: jury question: sufficiency of evidence.

The second specification was not submitted to the jury, but the others were, resulting in the verdict hitherto stated.

Defendant denied all negligence, and pleaded assumption of risk and contributory negligence. It is claimed in argument that there was no evidence of defendant's negligence; no testimony that the negligence, if any, was the proximate cause of the injury; that plaintiff was guilty of contributory negligence and assumed the risk; and that, upon the whole record, no judgment should have been entered for plaintiff. In addition, certain rulings on the admission of evidence and some of the instructions given and the refusal to give certain others are complained of, and it is also asserted that the verdict was excessive.

II. Defendant's mine is what is called a drift one, the shaft entering at or near the bottom of a hill, and, from this main one, which runs into the hill, several entryways branch off into rooms. At the time of the accident, the working face of the mine was something like 1,400 feet from the opening of the shaft or entryway. The mine and the entries were lighted by electricity. The main shaft or entryway was from 10 to 14 feet wide and about 9 feet high. A ventilating system was installed, and an air tube extended into the main entry something like 12 feet, where a fan was placed in a box, this box being near the top of the entry. At the mouth of the entry, a framework was constructed, with a door in this frame. This door was hung upon heavy hinges attached to the south side or southeast wall, and the door itself was about 6 feet wide and 6 feet 6 inches in height. It was constructed of inch boards nailed together diagonally. It opened but one way, and, when opened, swung into the mine and rested against the southeast wall or rib. There was a handgrip upon it, but it had no latch. It was also equipped with a half-inch rope attached to the upper north corner of the door, and this rope from there was carried over pulleys for something like 20 feet along the south side of the rib back into the mine. This was for the purpose of opening the door without using the handle or grip thereon. The forcing of the air into the mine kept the door closed, and it is claimed that for this

reason it could not have been made to swing both ways. The rope to which we have referred was put in 4 or 5 months before the accident, and it is claimed that this was put in at plaintiff's request, so that he could open the door without going to the handle or grip; but it was installed by defendant's employees; and defendant constructively knew that it had been installed and was in use for the purposes intended. Plaintiff was an experienced miner and entirely familiar with the construction of the door and all its appliances; and, in the performance of his duties, he was required to open the door frequently for many months. On the day of the accident, he was driving his mule, and was making his regular trip from the place where he received his cars to the mouth of the entry. At that time, he had 13 cars on the way to the mouth of the mine. Part of the time on his journey, he walked beside the cars, and part of the time, he rode upon one of the cars. By reason of grades in the track, he was compelled at places to brake or sprag the cars while passing down an incline of something like 100 feet. After holding them back at this point, he removed the sprag and, being then not far from the door, he would go to the rope and open the door, or would run ahead of the mule and open it by hand; so that the mule with its load of cars could pass through the door and out to the mouth of the entry. On the day in question, he spragged the cars as usual and, as he approached the door, went to the rope for the purpose of opening the door, the mule at that time being close upon him. He grabbed the rope and, as he pulled upon it, the door opened a little, and then the rope broke and the door flew back to its normal position. Realizing that something must be done to save the mule from hitting the door, he rushed to the door itself and had it partly opened by hand, when the mule was forced upon him by the cars and crushed him against the door, breaking his leg and otherwise bruising him. He was immediately taken to a hospital, where he remained for more than seven weeks, and, after his discharge therefrom, he was confined to his room

for a few days.   At the time of trial, the broken leg was somewhat stiff and it was shortened from three fourths to seven eighths of an inch; but there was testimony that he would eventually recover the use of his limb.   All the cars in the train were loaded, and each weighed from 500 to 600 pounds, and each carried from a ton to 2,200 pounds of rock. Except for a short distance, from the place where the plaintiff received his cars, the entryway was practically level; but the grade from the point where he received them for a distance of 100 feet or more compelled the use of a sprag; but plaintiff was not expected at any time to bring his train to a full stop.   The rope which broke had been in use for 6 or 7 months, although it had been attached to the door for only 4 months, and it broke close to the door.   Plaintiff testified that, while lying in the entry after the injury, he noticed this rope where it broke, and that it looked ragged and worn.

Plaintiff was permitted to prove, over defendant's objections, that it was the general custom or plan in other mines to construct such doors as were in defendant's mine so that they would swing both ways, on the theory that this tended to prove negligence on the part of the defendant, and that, but for this negligence, plaintiff would not have been injured; for he could in such circumstances have pushed the door open, allowing the mule and train to pass through, instead of pulling it open toward the approaching mule with its train of cars.   It is said that this testimony was inadmissible to prove negligence.   That such testimony is admissible as bearing upon defendant's care in the premises is well settled by our own decisions.   *Austin v. Chicago, R. I. & P. R. Co.*, 93 Iowa 236; *Anderson v. Illinois C. R. Co.*, 109 Iowa 524.   This seems to be the general rule. Labatt on Master & Servant (2d Ed.), Vol. 3, Sec. 939, and cases cited in Note 1.   Of course, evidence of custom is not admissible for the purpose of excusing negligence; but, for

2. MASTER AND SERVANT: negligence: evidence: custom to show negligence or non-negligence contrasted.

the purpose of ascertaining whether or not a given construction is reasonably safe, evidence of the general custom and usage of others in the same situation with reference to methods of construction is admissible, as tending to show that the construction under investigation was not such as ordinary prudence would dictate; and this rule is peculiarly applicable when applied to machinery and other appliances or places to work with which an ordinary juryman is not familiar. *Hamilton v. Chicago, B. & Q. R. Co.*, 145 Iowa 431.

III. There was, in our opinion, sufficient testimony to take the case to the jury upon the question of negligence in the respects submitted to the jury, and upon the further question as to whether this negligence was the proximate cause, or one of the causes, of plaintiff's injury.

3. MASTER AND SERVANT: proximate cause: intervening cause: contributory negligence: confusing instructions.

In this connection, we may also dispose of a complaint made of the instructions on proximate cause. We have examined them in the light of the argument and find no error.

The defendant asked two instructions to the effect that, if the injury would not have occurred save for the voluntary act of plaintiff's intervening between the negligent acts of the defendant and the injury, then defendant's negligence, if any, was not the proximate cause of the injury, and no recovery could be had. These instructions were properly refused. In the form asked, they were misleading, and confused negligence and contributory negligence in such a way as to mislead. Of course, it must be shown that, but for defendant's negligence in the respects charged, the accident would not have happened, and the doctrine of intervening cause has primarily no reference to the conduct of the plaintiff, but to some other responsible agency for which the defendant was not responsible, intervening between defendant's negligence and plaintiff's injury, without which the accident would not have happened. Even in such cases, this intervening human agency may not relieve a negligent defendant;

for, if its original wrong concurred with the intervening cause and both acted proximately at the same time in producing the injury, either or both are, as a rule, liable. *Gould v. Schermer,* 101 Iowa 582; *Watters v. City of Waterloo,* 126 Iowa 199. Plaintiff's conduct is, of course, relevant upon the question of his negligence, and, if it be shown that the accident would not have happened except for his concurring fault, he cannot recover, because, by his own negligent conduct, he brought the wrong upon himself and the wrongs cannot be apportioned. *Liming v. Illinois C. R. Co.,* 81 Iowa 246. The instructions asked, therefore, confuse the matter of contributory negligence with that of independent cause, and were properly refused. Plaintiff's conduct was, of course, a matter in issue bearing upon contributory negligence, but did not, strictly speaking, bear upon the question of proximate cause.

IV. This brings us logically to the question of plaintiff's contributory negligence. We are asked to say, as a matter of law, that plaintiff was guilty of contributory negligence in running ahead of the mule and in

4. NEGLIGENCE: contributory negligence: emergency: duty to preserve property: position of peril.

attempting to open the door so that the mule and his train could pass through. The argument is that, when the rope broke, he should either have used his sprag and attempted to stop the train, or simply stood aside and allowed the mule and the train to run into the door, taking the consequences of such a collision, or mounted the cars themselves, in any of which events the plaintiff would have been safe, and the accident would not have happened; whereas, he ran ahead of the mule, voluntarily put himself in a place of danger, and not only assumed the risk but was so negligent that he should not be permitted to complain. There was testimony to the effect that the mule itself was close upon the plaintiff when the rope broke, and that plaintiff was under a duty to preserve his master's property from harm. Of course, he might have attempted to sprag the train; but the distance was short, and failure to stop the train was

a hazard not only to the property which was in his care, but also to himself. The same may be said as to his stepping aside in the entryway. As a matter of fact, the mule and the train piled up when they struck the door, some of the cars being derailed—that course, therefore, was attended with hazard. The same thing may be said had he mounted one of the cars and taken his chances. Under our rule, the mere fact that one chooses a negligent way of accomplishing an object where others are open to him does not constitute contributory negligence, as a matter of law. In such circumstances, the question is for a jury. *Huggard v. Glucose Sugar Refining Co.*, 132 Iowa 724; *Gibson v. Burlington, C. R. & N. R. Co.*, 107 Iowa 596; *Graham v. Town of Oxford*, 105 Iowa 705; *Verlin v. United States Gypsum Co.*, 154 Iowa 723; *Stephenson v. Sheffield Brick & Tile Co.*, 151 Iowa 371; *Pierson v. Chicago & N. W. R. Co.*, 127 Iowa 13. It is always proper, in considering the question of a plaintiff's contributory negligence, to take into consideration the circumstances under which he is required to act—that is, whether in an emergency or deliberately; whether he was under a duty to save the property in his charge; whether or not he was in peril; and from all these determine whether or not he acted with that degree of care and prudence that an ordinary man would observe under like or similar conditions. See case last cited, and *Stokes v. Sac City*, 162 Iowa 514; *Bruggeman v. Illinois Cent. R. Co.*, 147 Iowa 187; *Kern v. Des Moines City R. Co.*, 141 Iowa 620; *Brantner v. Chicago, B. & Q. R. Co.*, 136 Iowa 349; and many others cited in these opinions.

V. Closely related to this question of contributory negligence is the claim that plaintiff, having knowledge of the situation, assumed the risk incident to the performance of the work under the then known conditions.

5. MASTER AND SERVANT: assumption of risk: dangerous condition: knowledge.

There is no testimony that plaintiff knew that the rope was defective or that he was in any peril in attempting to use it. The breaking of the rope was one of the causes, if not the

cause, of the accident.  If there had been no rope, and plaintiff had simply assumed to run ahead of the mule to open the door, without being required to perform his work in that way by the master, it may be that it could well be said that he assumed the risk in so doing.  But that is not the situation here.  A jury was justified in finding that, so long as the rope was kept in repair and in condition to perform the work it was expected to do, there was no peril either in using the rope or in the door which was hung so as to swing but one way; and, unless he knew of the dangerous condition and of the peril attendant upon his work about the door, he did not, as a matter of law, assume the risk.  It cannot be said, under this record, that the testimony shows assumption of risk, as a matter of law.  No complaint is made of the instructions with reference to assumption of risk, save that the matter should not have been submitted at all.

VI.  We are now brought down to some specific objections to the instructions.  The court submitted in terms the four specifications of negligence heretofore stated, and among them the general one—that defendant did not

6. MASTER AND SERVANT: negligence: pleadings: lack of specification: submission of issues: estoppel.

furnish plaintiff a safe place to work, and that the place was an unusually dangerous one.  This was in accord with the allegations of the petition, and defendant did not move for a more specific statement.  The complaint is that the jury might have found defendant not negligent in furnishing or inspecting the rope; that the gate was properly hung; and that defendant was under no duty to keep a boy or man at the place to open the door, which, it is said, are the only things really complained of, and still find defendant negligent for some unassigned reason.  If the premises were correct, this argument would be sound, and doubtless conclusive, but in the general charge of an unsafe place to work, there was involved the entire construction of the entry, door, air circulation box and fan, location of tracks, etc.; and under this allegation, the entire construction was in issue.

The trial court so treated the matter in its fifth instruction, and, if the question was so left open, it was due to defendant's failure to have the grounds of negligence more definitely specified.

VII. The other instructions complained of have reference to contributory negligence. The first one reads as follows:

7. NEGLIGENCE: contributory negligence: definition: construction.

"You have been told in a preceding paragraph of these instructions that the plaintiff must, before he can recover, establish the fact, by a preponderance of the evidence, that he was not guilty of contributory negligence. By 'contributory negligence', gentlemen, is meant the doing of some act by the party complaining, that to some extent aided in *bringing about the conditions* that produced the injuries, that a person of ordinary care, prudence and caution would not have done, under the then surrounding circumstances, or the omission on his part of some act that such person of such ordinary caution, prudence, and care, would not have omitted to do under the then existing circumstances."

The use of the italicized words is complained of. They are a little unusual; but, when the instruction is considered as a whole and in connection with the one to which it refers, it is manifest that no harm resulted. Whether it be held that the conditions referred to were the acts of the plaintiff which caused the collision, or the conditions existent at that time, for which plaintiff was responsible, it refers to some act done by the complaining party which, to some extent, aided in bringing about the injury. The more serious complaint is of Instructions 9, 9½ and 12. These read as follows, the underscored words being the ones complained of:

8. TRIAL: instructions: modifications: negligence.

"9. You are instructed that if you find from the evidence that the plaintiff left a place of safety, and while there was not time for him to open

the door in the manner he attempted to open the same before the mule and cars would have so far advanced as to put him in danger of injury, and that without first looking and ascertaining the position of the advancing mule and cars, he voluntarily put himself in a position where he could be injured in consequence of the advancing mule and cars, there can be no recovery on behalf of the plaintiff, and your verdict should be for the defendant. *However, this would not be true if you find, by a preponderance of the evidence, that the place which the plaintiff left when the rope broke was not a place of safety but was a place of danger, or if you find that, from the circumstances as they then appeared to plaintiff that he, acting as a reasonably prudent and careful man, thought that the position was one of peril and danger to him.*

"9½. If in this case the jury finds that the plaintiff was in a position near the rib of the mine entry where he was not in danger, had he remained in such position, and while there was fully aware of, and knew the existence of all of those matters which he charges now to be negligence, and with such knowledge voluntarily stepped between the rails of the track in said entry where he was injured, such voluntary action on the part of the plaintiff would prevent his recovery in this case, and your verdict, if you so find the facts to be, should be for the defendant. *However, this would not be true if you find that the position the plaintiff was in near the rib of the mine entry when the rope broke was a place of peril and danger to him, and that he was in danger of being injured, had he remained in such position, or if you find that, from the circumstances as they then appeared to him, acting as a reasonably prudent and careful man, he supposed such place to be a place of danger and peril to him.*

"12. It is claimed by the plaintiff in this case that just prior to the happening of the accident which resulted in his injuries, and as the mule and train of cars of which he was in charge approached the door to the entrance of the mine,

and when he pulled the rope for the purpose of opening said door, that the rope broke and the door did not open, and that the plaintiff was then confronted with a sudden and imminent danger and peril to himself, and that such emergency was brought about by the alleged negligence of the defendant, and without negligence on the part of the plaintiff, and that in running ahead to open said door before they should reach it, he was seeking to avoid danger and peril and to obtain safety for himself and for the mule and train of cars of which he was in charge. With regard to such claim you are instructed that if you find, by a preponderance of the evidence, that one of the specific charges of negligence made by the plaintiff, and submitted in these instructions, was the proximate cause of placing the plaintiff, at the time and place charged, in a place of danger and peril, then in such emergency you are instructed that the plaintiff was not required, under the law, to act with the same deliberation and foresight that might be expected of him under ordinary circumstances, but that all the law requires of a servant acting in an emergency such as above described is that he act with ordinary and reasonable care, in the light of the circumstances as they appeared to him at the time, *and the fact, if it be a fact, that he did not take the safest course or best course which he could have taken in such emergency, will not authorize you in finding that he was guilty of contributory negligence in so doing.*"

The italicized parts of 9 and 9½ were added by the court on its own motion to instructions asked by defendant, and it is claimed that they entirely emasculated the instructions and announced incorrect rules of law. We see no error in these modifications. As asked, they were not intended to cover the whole question of plaintiff's conduct, but simply one theory of it, and that, the assumption that he left a perfectly safe place and voluntarily assumed a hazard which he knew, or had reason to believe, would result in harm. In

each case, the court said that this would defeat his recovery; but, to guard against any mistake on the part of the jury, he added the qualification that this rule would not apply if the place he was in was not a safe one, or if he, acting as a reasonably prudent man, believed that he was in a place of danger. This qualification did nothing more than to relieve plaintiff from the charge of contributory negligence as a matter of law, if he left a dangerous place for another which was also dangerous. Each instruction was, as a whole, consistent, and did not affirmatively announce an erroneous doctrine.

9. NEGLIGENCE: contributory negligence: emergency: choice of ways: choosing the more hazardous.

The matter of choice of perils was embodied in the twelfth instruction, and that instruction is not challenged save as to the final clause. As we read this instruction, it does nothing more than to announce the rule already stated in this opinion: that, if one is placed in sudden and imminent peril, and is confronted with an emergency which may be met in two or more different ways, he is not to be held guilty of contributory negligence, as a matter of law, simply because he chose the most hazardous way of doing his work. The jury was, by this very instruction, directed to the question as to whether or not plaintiff exercised reasonable care and prudence in making his choice. In other instructions, they were told that, if plaintiff did not exercise this degree of care, he could not recover. We see no prejudicial error in any of the instructions.

VIII.  The verdict was for $5,000. Plaintiff suffered a compound fracture; he endured much pain; one leg is shorter than the other, and his spine has had to adjust itself thereto.

10. TRIAL: verdict: excessiveness: $5,000.

He still walks with a cane and cannot bear any weight on his injured leg. The knee joint is still stiff. He was 40 years of age at the time of his injury, and was earning about $75 a month. Since his injury, he has not been able to do any considerable

work. Taking all these matters into account, we are not disposed to interfere with the verdict. No prejudicial error appearing, the judgment must be, and it is—*Affirmed.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.